IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MICHAEL HACKLEY ARCHITECTS, P.C. AND MICHAEL HACKLEY,** * | |
| * | |
| Plaintiffs, | |
| * | |
| V. | |
| * | **CASE NO: JFM 02 CV 3363** |
| **LVLX, INC., JOHN LEE, COMMERCIAL FINISH GROUP, INC., JEFFREY WAY, AND JOHN TROUTON,** * | |
| * | |
| Defendants. * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS MICHAEL HACKLEY AND MICHAEL HACKLEY ARCHITECTS, P.C.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION FOR RULE 16(f) SANCTIONS**

Defendants, LVL X, Inc., John Lee and Jeffrey Way, have moved for Rule 16(f) sanctions against plaintiffs. As grounds therefor, defendants allege that plaintiff disregarded this Court's Scheduling Order by "refusing to attend a settlement conference by the cut-off date." Though unrelated to the aforementioned allegation, defendants further allege that plaintiff improperly invoked the Fifth Amendment and also refused to testify about alleged damages. Although defendants allege these grounds for their motion, purportedly based on Rule 16(f) Sanctions for failure to obey a scheduling order, they attempt to mis-use this Motion for Sanctions as an opportunity to argue the merits of their case, by alleging purported facts and arguments comprising their defenses of this Action. As explained in detail below, plaintiff Michael Hackley did not improperly invoke the Fifth Amendment, refuse to testify about alleged damages, nor disregard this Court's Scheduling Order. Thus, defendants' Motion for Rule 16(f) Sanctions should be denied.

Contrary to defendants' unfounded and improper allegations, plaintiffs at all times have been "frank and fair with the court" and placed "'everything that tends to a full and fair determination of the matters in controversy' before this Court." Keystone Co. v. Excavator Co., 290 U.S. 240 (1933).

1. Plaintiffs Did Not Improperly Invoke the Fifth Amendment.

Defendants allege that Plaintiff Hackley improperly invoked the Fifth Amendment and unfairly prejudiced defendants' attempt to further show that LVL X had paid Hackley for the drawings at issue. [Defendants' Memorandum in Support of their Motion for Sanctions, page 6.] As plaintiff Michael Hackley stated under oath in his Supplementary Response to Interrogatory No. 10 [Exhibit 10 to Defendants' Memorandum in Support of its Motion], he did not turn over the chandelier, paid for by LVL X, Inc., to LVL X, Inc. because LVL X, Inc. owed plaintiffs payments for professional services rendered. Plaintiff did however, inform LVL X, Inc., through its agent, that he would be willing to turn over the chandelier if defendant John Lee was willing to discuss the monies owed. This interaction occurred in June 2002 and defendants never approached plaintiffs about the chandelier until defendant John Lee filed criminal charges against defendant in May 2003, just short of one year later. Plaintiff Michael Hackley originally objected to defendants' Interrogatory No. 10 on multiple grounds, including irrelevance. However, even though plaintiff believed that questions regarding the chandelier are irrelevant to the present action, plaintiff agreed to respond and served his supplementary response to Interrogatory No. 10 on June 8, 2003. Plaintiff maintains that his supplementary response to Interrogatory No. 10 is a true and accurate representation of the facts regarding the chandelier. As

*Plaintiffs' Opposition to Defendants Motion for Sanctions*
*Hackley v. LVL X, Inc. et al*
*Page 2*

defendant John Lee filed criminal charges against plaintiff with regard to his purported illegal possession of the chandelier, plaintiff was required to retain separate defense counsel to represent him in the criminal case. After plaintiff served his supplementary response to Interrogatory No. 10, his criminal defense counsel advised him to assert the privilege against self-incrimination with regard to any questions pertaining to the chandelier. Plaintiff did, in fact, confirm in his deposition that the response to Interrogatory No. 10 was true, accurate and complete to the best of his knowledge. However, as instructed by his criminal defense attorney, he properly invoked his Fifth Amendment privilege when counsel for defendants asked additional questions regarding the chandelier. The criminal trial was scheduled to be held on July 17, 2003, but resulted in a <u>Nolle Prosequi</u> on that date. [See Exhibit A.] Nevertheless, at the time plaintiff's deposition testimony was taken on June 16 and 17, 2003, the criminal charges were outstanding against plaintiff, a trial was scheduled, and he was faced with the dire threat of standing trial, potential imposition of fines or incarceration, with the possible consequences of losing his architecture license and hence, his livelihood. Thus, plaintiff's assertion of the Fifth Amendment was both proper and justified. "Invoking the 5th amendment is such an important right, the privilege against self incrimination can be invoked in any proceeding where the witness 'reasonably believes that his testimony could be used in a criminal prosecution or could lead to other evidence that might be so used.'" <u>Kastigar v. United States</u>, 406 U.S. 441 (1972). See also, <u>Hoffman v. United States</u>, 341 U.S. 479 (1951) (The privilege against self incrimination as embodied in the fifth amendment "must be accorded liberal construction.") The circuits have also held that waiver does not occur where further disclosure carries a risk of incrimination beyond that raised by the previous testimony. See <u>United States v. Seavers</u>, 472 F.2d 607 (6th Cir. 1973); <u>In re Master Key Litigation</u>, 507 F.2d 292 (9th Cir. 1974).

*Plaintiffs' Opposition to Defendants Motion for Sanctions*
*Hackley v. LVL X, Inc. et al*
*Page 3*

In the Arndstein cases, [Arndstein v. McCarthy, 254 U.S. 71 (1920) and McCarthy v. Arndstein, 262 U.S. 355 (1923), the Supreme Court held, respectively, that the Fifth Amendment must have a broad construction in favor of the right which it was intended to secure [Arndstein v. McCarthy, at 73], and that if none of the witness's answers voluntarily given amount to an admission or showing of guilt, the witness is entitled to decline to answer further questions when to do so might tend to incriminate him [McCarthy v. Arndstein, at 359].

Defendants cite Brown v. U.S., 356 U.S. 148 (1958) and Nutramax Labs v. Twin Labs, 32 F. Supp. 2d 331 (USDC DM 1999) in support of their allegation that plaintiff "not waiving the Fifth is clearly without any factual and legal basis." The facts in these cases are easily distinguished from the present case. In Brown, the Supreme Court held that a witness who takes the stand in her own behalf cannot invoke the Fifth Amendment on cross-examination of matters made relevant by her direct examination. In the present case, defendants propounded the interrogatory regarding the chandelier to which plaintiff responded, defendants then filed criminal charges against plaintiff, and finally defendants attempted to elicit additional potentially incriminating testimony for the criminal case. It was due to defendants' own actions that plaintiff was forced to invoke the Fifth Amendment. Further, in Nutramax, this Court found that the "Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion." In the present case, plaintiff invoked the Fifth Amendment only with regard to questions about the chandelier in light of his pending criminal trial initiated by defendant, and not as a self-serving means to further his own claim, as in Nutramax. Moreover, plaintiff does not rely on any facts related to the chandelier to prove his action for copyright infringement and Lanham Act violation.

*Plaintiffs' Opposition to Defendants Motion for Sanctions*
*Hackley v. LVL X, Inc. et al*
*Page 4*

Additionally, in <u>In re Hitchings, United States v. Allegheny Pepsi-Cola Bottling Company</u>, 850 F.2d 180 (4th Cir. 1988), the court held that the witness did not waive the right to assert her Fifth Amendment privilege because the mere fact that she had previously testified truthfully to the grand jury is not an incriminating fact or an admission of guilt. In the present case, plaintiff's answer to Interrogatory No. 10 and his affirmation of its truth is not incriminating, and therefore, he did not waive his right.

Defendants' allegation that counsel asked additional questions regarding the chandelier in seeking to obtain plaintiff's admission that he "withheld the chandelier to get LVL X to pay for the rendering" is preposterous. Defendants' counsel insisted on drawing out plaintiff's deposition into two days. Plaintiff's deposition testimony transcript is two volumes. Plaintiff clearly answered numerous other questions regarding the amounts owed to plaintiffs by defendants and the justification for those amounts. Thus, defendants' insistence on asking questions regarding the chandelier was merely a ruse to attempt to extract incriminating evidence against plaintiff that could be used in the criminal trial against him. This theory is borne out by the fact that counsel for defendants provided both plaintiff's supplementary response to Interrogatory No. 10 and the Ron Reece declaration, along with other documents, to the district attorney in the criminal case.

Defendants attempt to put up a smoke screen to cloud the issues they purport to be asserting by arguing the ownership of the copyright in the accused works. This Motion for Rule 16(f) Sanctions is not the proper forum for setting forth defendants' defenses to the threshold question of ownership in a Copyright case, such arguments are appropriate for trial. For example, defendants attempt to argue the question of payment for the Prince George's Plaza LVL X drawings, which presupposes that the drawings were being sold. Plaintiffs maintain that they were not, yet, this is an issue for trial. Further,

*Plaintiffs' Opposition to Defendants Motion for Sanctions*
*Hackley v. LVL X, Inc. et al*
*Page 5*

defendants continuously mischaracterize testimony in support of its arguments. For example, defendants state that plaintiff admitted in his deposition that he "likely created a misunderstanding" [Defendants Motion page 2], when the testimony cited clearly states, "There could be a misunderstanding but that doesn't mean I don't own the drawings." [Defendants' Motion Footnote 2.] Defendants allege that "plaintiff does not deny that he now has an attorney to collect the rendering invoice", and cites Footnote 7 in support of this allegation. As Mr. Hackley had already stated that he had an attorney-client relationship with Mr. Dore (plaintiffs' criminal defense attorney), counsel attempted to thwart the asserted attorney-client privilege by asking the purpose of the attorney-client relationship and inferring the purpose. [Defendants' Motion, Footnote 7.] Defendants also make false allegations, not supported, because they cannot be, by any evidence. For example, on page 8 of Defendants' Motion, they state that "Hackley caused LVL X's PGP construction permit to be cancelled by also wrongfully withholding the construction set of drawings", and "Hackley fraudulently did not disclose, and LVL X was not otherwise informed, that Hackley had withheld the construction set of drawings." These statements, like others in this Motion, have no basis in fact. Moreover, as previously stated, these arguments, if they could be supported by evidence, would be proper for trial.

2.  Plaintiff's Refusal to Provide the Amounts Received in Settlement With the Other Two Defendants Does Not Show That Plaintiffs Did Not Sustain Any Damages.

Defendants also allege that plaintiff "refused to testify on matters related to his claim for damages" and refers to Footnote 17, which is an extract from plaintiff's deposition testimony where defendants' counsel asked plaintiff about the amounts received in settlements with the other two

*Plaintiffs' Opposition to Defendants Motion for Sanctions*
*Hackley v. LVL X, Inc. et al*
*Page 6*

defendants and plaintiffs' counsel instructed plaintiff not to answer. One of the agreements in negotiation specifically includes a confidentiality clause. More importantly, plaintiff's refusal to answer the question about settlement amounts with other defendants clearly does not warrant sanctions on the ground that "plaintiffs did not sustain any damages for the alleged violations in this case." [Defendants' Motion, page 9, para.1.] Defendants cite U.S. v. Bronston, 453 F.2d 555 (1972) in support of their allegations. However, defendants' reliance on Bronston is misplaced. Bronston was convicted of perjury and appealed his conviction. In upholding the district court decision, the Second Circuit Court of Appeals held that where the defendant was unambiguously asked in bankruptcy examination simply to state whether he ever had a Swiss bank account and defendant answered that the company had an account in Zurich for six months, while that much of the answer was literally true, the jury was entitled to find the answer was intended to represent that defendant did not personally have such an account. The court further held that the jury could have inferred that defendant willfully gave false and evasive testimony from conclusive proof of existence of the personal account, from defendant's motive to conceal assets in a bankruptcy proceeding, and the unlikelihood that a businessman would forget such an account. Without a doubt, the existence of a bank account is crucial information in a bankruptcy proceeding. Plaintiff's refusal to disclose amounts of settlements with other defendants clearly does not rise to the same level as Bronson.

3.  Plaintiff Did Not Fail to Obey the Court's Scheduling Order.

Although not completely clear, it appears that Defendants further allege that Rule 16(f) sanctions should be imposed against plaintiffs for "failure to obey the scheduling order." Defendants allege that

*Plaintiffs' Opposition to Defendants Motion for Sanctions*
*Hackley v. LVL X, Inc. et al*
*Page 7*

plaintiffs agreed to have plaintiff meet defendants and then failed to cooperate with defendants to hold a settlement conference. Plaintiffs did not and had no intention of disobeying this Court's Scheduling Order. Defendants' allegations are completely unfounded and as plaintiffs discuss in detail in their Motion to Amend the Scheduling Order and Reply to Defendants' Opposition to Plaintiffs' Motion to Amend the Scheduling Order, plaintiffs, in good faith, made numerous attempts to get defendants to agree to a settlement conference, and defendants did not proffer a settlement date until two days before the end of the discovery period.

Plaintiffs requested a scheduling conference at least as early as May 29, 2003 and again on June 5, 2003 and June 18, 2003. [Exhibit B to Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion to Amend the Scheduling Order.]  On June 18, 2003, Plaintiffs suggested June 27, 2003 as a possible date and asked that defendants confirm by June 20, 2003.  Defendants did not respond to this (or any prior) request for a settlement conference, but instead, on June 25, 2003 at 3:00 at the beginning of one of the defendants' depositions, stated that they would be "here" for a settlement conference on June 27, 2003 at 2:00.  Plaintiffs never agreed to attend.  Indeed, as the deposition was taking place in the offices of the Court Reporter, who happens to be in the same building as plaintiffs' counsel, it was unclear what defendants meant by "here."  Further, if defendants had responded to plaintiffs' multiple requests to meet for a scheduling conference, plaintiffs would have willingly met with defendants, but plaintiffs could not be available on less than two days notice.

Plaintiffs, on multiple occasions and in good faith, requested that defendants provide a date for a settlement conference.  In compliance with the Scheduling Order and in a good faith effort to settle this matter, plaintiffs made a settlement offer to defendants on May 9, 2003.  Indeed, as evidence of

*Plaintiffs' Opposition to Defendants Motion for Sanctions*
*Hackley v. LVL X, Inc. et al*
*Page 8*

plaintiffs' willingness to settle, plaintiffs have negotiated settlements with defendants Commercial Finish Group, Inc. and John Trouton.

4.     Rule 37(b)(2)(B) Sanctions are Unwarranted and Unjustified.

Defendants add, almost as a footnote, that they are seeking draconian Rule 37(B)(2)(B) sanctions "precluding plaintiffs' from opposing that LVL X paid plaintiffs for the PGP drawings; that plaintiffs' wrongfully withheld LVL X's chandelier; and, that plaintiffs were not damaged by the violations that they allege in this case." Defendants correctly cite Chambers v. NASCO, 501 U.S. 32 (1991) as standing for the premise that the court possesses inherent power to impose sanctions. However, the Chambers Court also stated that "because of their very potency, inherent powers must be exercised with restraint and discretion," and that by virtue of this discretion, the court may fashion an appropriate sanction for the conduct which abuses the judicial process. In Chambers, the lower court found that Chambers had attempted to deprive the court of jurisdiction by acts of fraud, filed false and frivolous pleadings, and "attempted, by other tactics of delay, oppression, harassment and massive expense to reduce [NASCO] to exhausted compliance." Clearly, defendants' requested Rule 37(B)(2)(B) sanctions are not appropriate here. Defendants have not shown fraud, false and frivolous pleadings, harassment, oppression, nor any other bad faith conduct by plaintiff. It appears that defendants are attempting to skirt the judicial process of asserting their defenses in the proper forum by moving this Court to impose the draconian sanctions of what is akin to a finding of summary judgment in defendants' favor.

This Circuit set forth a four-part test to determine the appropriateness of Rule 37 sanctions: 1) whether the non-complying party acted in bad faith; 2)the amount of prejudice its noncompliance caused

*Plaintiffs' Opposition to Defendants Motion for Sanctions*
*Hackley v. LVL X, Inc. et al*
*Page 9*

its adversary; 3) the need for deterrence on the particular sort of noncompliance; and 4) the effectiveness of less drastic sanctions.  Mutual Federal Savings & Loan Ass'n v. Richards & Assocs., Inc., 872 F.2d 88 at 92 (4th Cir. 1989).  Defendants have not shown the threshold issue that plaintiffs did not comply with an Order, which would warrant any sanctions.  Most certainly, defendants have not, because they cannot, shown plaintiffs' bad faith nor any prejudice caused defendants. Thus, defendants' Motion for Sanctions is without merit and should be denied.

WHEREFORE, Plaintiffs request that the Court deny Defendants' Motion for Rule 16(f) Sanctions.

Respectfully submitted,

Dated:  July 27, 2003

_____/s/_____
Royal W. Craig (Bar No. 24,546)
Deborah J. Westervelt (Bar No. 26,282)
Attorneys for Plaintiffs
Law Offices of Royal W. Craig
10 North Calvert Street
Suite 153
Baltimore, Maryland 21202
(410) 385-2383

*Plaintiffs' Opposition to Defendants Motion for Sanctions*
*Hackley v. LVL X, Inc. et al*
*Page 10*

## TABLE OF AUTHORITIES

Arndstein v. McCarthy, 254 U.S. 71 (1920)......................................................................................3

Brown v. United States, 356 U.S. 148 (1958)..................................................................................4

Chambers v. NASCO, 501 U.S. 32 (1991).......................................................................................9

Hoffman v. United States, 341 U.S. 479 (1951)...............................................................................3

In re Hitchings, United States v. Allegheny Pepsi-Cola Bottling Co.,
850 F.2d 180 (4th Cir. 1988).............................................................................................................4

In re Master Key Litigation, 507 F.2d 292 (9th Cir. 1974)...............................................................3

Kastigar v. United States, 406 U.S. 441 (1972)................................................................................3

Keystone Co. v. Excavator Co., 290 U.S. 240 (1933)……………………………………………..2

McCarthy v. Arndstein, 262 U.S. 355 (1923)...................................................................................3

Mutual Federal Savings & Loan Ass'n v. Richards & Assocs., Inc., 872 F.2d 88

(4th Cir. 1989)……………………………………………………………………………………....9

Nutramax Laboratories, Inc. v. Twin Laboratories, Inc. et al,
32 F.Supp.2d 331 (USDC DM 1999)...............................................................................................4

United States v. Bronston, 453 F.2d 555 (2nd Cir.1972)...................................................................7

United States v. Seavers, 472 F.2d 607 (6th Cir. 1973).....................................................................3

## TABLE OF AUTHORITIES

Arndstein v. McCarthy, 254 U.S. 71 (1920)......................................................................................3

Brown v. United States, 356 U.S. 148 (1958)..................................................................................4

Chambers v. NASCO, 501 U.S. 32 (1991).......................................................................................9

Hoffman v. United States, 341 U.S. 479 (1951)...............................................................................3

In re Hitchings, United States v. Allegheny Pepsi-Cola Bottling Co.,
850 F.2d 180 (4th Cir. 1988).............................................................................................................4

In re Master Key Litigation, 507 F.2d 292 (9th Cir. 1974)...............................................................3

Kastigar v. United States, 406 U.S. 441 (1972)................................................................................3

Keystone Co. v. Excavator Co., 290 U.S. 240 (1933)……………………………………………..2

McCarthy v. Arndstein, 262 U.S. 355 (1923)...................................................................................3

Mutual Federal Savings & Loan Ass'n v. Richards & Assocs., Inc., 872 F.2d 88

(4th Cir. 1989)……………………………………………………………………………………....9

Nutramax Laboratories, Inc. v. Twin Laboratories, Inc. et al,
32 F.Supp.2d 331 (USDC DM 1999)...............................................................................................4

United States v. Bronston, 453 F.2d 555 (2nd Cir.1972)...................................................................7

United States v. Seavers, 472 F.2d 607 (6th Cir. 1973).....................................................................3