IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL HACKLEY, et al.           :
    Plaintiffs,                            :
vs.                                                   :      JFM 02 CV 3363
LVL X, INC., et al.                        :
    Defendants.                         :

PLAINTIFF LVL X, INC.'S AFFIDAVIT
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, John Lee, the acting president of LVL X, Inc., am over 18 years old and I am competent to be a witness in that I operated LVL X for the period of time relevant to this case. I am currently the acting president for LVL X, Inc.

1. Plaintiffs did not use any copyright notices or symbols on any of the drawings that he worked on for LVL X.

2. LVL X paid plaintiffs the remaining $7,500 balance for the PGP drawings (and for many other items) with its $10,000 check number 2817, dated 05-28-02.

3. On about 05-08-02, I asked plaintiffs for a breakdown of the "electronic drawing" or rendering bill *(Exhibit 7)*. To this day, plaintiffs have never complied with this request. Plaintiffs incorrectly wrote on the rendering invoice that it was for marketing materials. LVL X asked plaintiffs for a more detailed sketch because it could not tell from his sketch *(Exhibit 8)* how the "new image" looked before constructing it.

4. Plaintiffs agreed to accept $10,000 for the 05-20-2002 summary of invoices. The deletions that I indicated on plaintiffs 05-20-02 summary of invoices reflects their agreement to delete said items and accept the check. Plaintiffs came to LVL X's office to pick up the check and cashed it that day or shortly thereafter. Plaintiffs induced LVL X to pay them $10,000 by agreeing to exclude said items. *Exhibit 10.*

5. Plaintiffs did not disclose to me that a draftsman worked on the rendering and was billed at the principal architect's rate of $125 per hour. Until his deposition, Hackley did not disclose the following: that he did not even ask the draftsman for his hours; that he, himself, didn't know his own number of hours that he allegedly worked on the rendering; that he had no records of any kind whatsoever from which Hackley created the rendering invoice; and, that the rendering invoice, although apparently calculated on hours, seems to be just an $8,000 flat rate bill.

6. Plaintiffs' 05-20-02 billing summary should be reduced for the $1,928.96 chandelier that he improperly withheld or stole from LVL X. Because LVL X had to replace it and because there are no plans to use one, it has no value to LVL X.

7. While in Hackley's office, Hackley told me that he was going to design LVL X's cash wrap table using the design of his "Le Corbusier" conference room table.

8. Plaintiffs also refused to provide a breakdown or support for the two contract administration invoices for $750 and $625 on *Exhibit 10*. The $7,500 remaining balance due for the PGP drawings and the $2,500 initial retainer that LVL X paid plaintiffs should both clearly be deleted after Hackley voided LVL X's PGP permit. The two chandeliers on the invoice summary *(Exhibit 10)* for Paramus Park and PGP should also be deleted because they were never purchased.

9. The "Proposal for Professional Services" dated "18 May 2000" *(Exhibit 1)* is the most recent proposal which I approved. Mr. Hackley prepared the proposal. The terms of which regulated plaintiffs' relationship with LVL X as its architect.

I, John Lee, declare and affirm under the penalties of perjury and upon personal knowledge that the foregoing facts are true and correct.

_____
John Lee

2