IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MICHAEL HACKLEY, et al. : | |
|     Plaintiffs : | |
| vs. : | CASE NO. JFM 02-CV-3363 |
| LVL X, INC., et al. : | |
|     Defendants : | |

REPLY TO PLAINTIFFS' OPPOSITION TO
DEFENDANTS' RULE 16(f) SANCTIONS MOTION

Defendants LVL X, Inc., John Lee, and Jeffrey Way hereby replies to plaintiffs' opposition to defendants' Rule 16(f) sanctions motion, and in reply states as follows:

As plaintiffs showed on page 8 of their opposition, the parties did discuss and were all along planning to hold their settlement conference during the last week of June, after the last of the parties' depositions had taken place (06-25-2003). This was no surprise to the plaintiffs. The date, 06-27-2003, was during the last week of June. However, Hackley refused to meet, without saying, and still not saying, even in his opposition, were else he had to be. He was available, but just refused to meet. Saying that he was not available in his refusal letter is likely to be a false statement. He also stated that he could not meet because he was confused on what the word "here" meant, further reflecting Hackley's bad faith.

On page 2 of their opposition, Hackley again admits that he withheld LVL X's chandelier, for which it paid Hackley, in an attempt to collect unrelated fees for professional services. *But, he did not say over which professional service fee he withheld LVL X's chandelier.* Defendants sought testimony over which fee, the generic rendering, or the PGP drawings, motivated Hackley to unlawfully withhold LVL X's chandelier, which is similar to Chalk's testimony that Hackley told him that he was pulling LVL X's PGP permit because LVL X did not pay him for the generic rendering. *Exhibit 1, para. 13.* It has been LVL X's contention all long that it paid Hackley for PGP plans, and not the rendering bill.

In his opposition, Hackley also neglected to tell this Court that his criminal theft charges were nolle prosequi because LVL X's personal knowledge witness, Ronald Reece, was unable to attend. Hackley withheld LVL X's chandelier when Reece went to pick it up.[1] On page 2, 2nd paragraph, last sentence,[2] of his opposition, Hackley still continues to omit this material fact as he previously did from his supplemental interrogatory answer 10. *Exhibits 2 and 3*. Accompanying his concealment of this material fact, Hackley's made a misleading statement that he "never agreed to ship the oversized chandelier to LVL X." *Id.* Hackley knows that shipping the chandelier was not an issue since Reece went to pick it up. Not only did defendants' deposition questions, as aforesaid, go to substantive issues, but they also concern Hackley's credibility as he made the interrogatory answer under oath.

Despite being faced with criminal felony theft charges, Hackley was still reluctant to return what he admits to be LVL X's chandelier in exchange for the charges being nolle prosequi, because LVL X allegedly still owed him money. Hackley clearly has the notion that it is permissible to withhold LVL X's property (felony theft), to pull LVL X's permit (extortion), and to sue a licensee, LVL X, for infringement, all in an attempt to collect what is now clearly evidenced to be a false rendering bill.[3] Even if Hackley did attend the

---

[1] LVL X did not demand Hackley to return the chandelier because it replaced it the day after he withheld it. When Hackley withheld the chandelier, he knew that LVL X was operating under very tight time constraints. The chandelier has no value to LVL X because LVL X replaced it and it has no plans to use another one.

[2] Opposition, page 2, 2nd paragraph, last sentence: "Plaintiff maintains that his supplementary response to Interrogatory 10 is a true and accurate representation of the facts regarding the chandelier."

[3] Not only did Hackley not keep time records, he charged LVL X architect rates for his draftsman time, except that he never asked his draftsman for his time. Hackley, p. 228 (lines 1-22) and p. 229 (lines 1-19):
    Q: Did you destroy the time records you said you have?
    A: I've never destroyed any time records.
    Q: Where are they? A: **I have no time records.** The invoice is my record of time.
    Q: That's the only record of your time.
    A: Yes.
    Q: That's the only record of your time that you ever made for this job is that invoice saying 64 hours?
    A: Yes, sir. He got a very good product and got it for a good price.
    **Q: You never asked John Chalk, as he states in his Affidavit, for his time; isn't that correct?**
    *(continued on next page)*

settlement conference, because he perceives his misconduct (theft and extortion) to be permissible, he would not likely have met with defendants LVL X and Lee in good faith.[4]

On page 4 of their opposition, plaintiffs state that: "[i]n the present case, defendants propounded the interrogatory regarding the chandelier to which plaintiff responded, defendants **then** filed criminal charges against plaintiff (emphasis added)." However, Hackley was clearly served with the felony theft charges on 05-15-2003, <u>before</u>, not after, Hackley had made his supplemental interrogatory answer number 10 on 06-06-2003. *Exhibit 4*. Not only did plaintiff know about it, plaintiffs' counsel does not deny knowing about it.

Also, Hackley initially retained his criminal defense attorney Dore to sue LVL X for copyright infringement in this court, but attorney Dore declined to do so after he had extensive discussions with LVL X's defense counsel. Further, noticeably absent from plaintiffs' opposition is the fact that at his deposition, Hackley's repeatedly asserted that he did not steel the chandelier. When Hackley did so he also waived the Fifth. Hackley waived the Fifth because he knew about the felony theft charges before making his supplemental answer 10 and/or he also made repeated assertions that he did not steel LVL X's chandelier.

On pages 5 and 6 of their opposition, plaintiffs make further incorrect statements. Hackley's deposition was not drawn out, it was very productive. Defense counsel was able to elicit very damaging testimony against Hackley at his deposition that would not have

---

**A: John didn't give me his exact hours. I think he just gave me the price he wanted, how much he wanted for his time, so I assume he did his own number of hours. I just estimated that for the amount of money that he wanted and I put my hours into it, and that's the price I came up with.**
Q: What part of the 64 hours are you claiming are his hours and your hours?
A: I don't remember exactly. This has been a year.
Q: But some of them are his hours and some of them are your hours?
A: Some of them are his hours and some are my hours.
Q: And you don't know?
A: At this moment I don't know.  This has been a year ago and your client has cheated me out of this for a whole year.  I haven't gotten paid for this.
Q: So you expect my client to pay you for something that you don't even have any records for as to time, dates, anything; isn't that correct?
A: My record is my invoice, and I've been asked and I've answered that.

[4] Despite the overwhelming evidence against Hackley, Hackley still maintains his $100,000.00 settlement demand that Hackley reluctantly made prior to any depositions and much of discovery taking place.

likely occurred using any other discovery method. Just as Hackley essentially admitted to making a false rendering bill, to currently having an attorney for the purpose of collecting the rendering bill (and not the PGP drawing bill), and to other damaging matters, in the same deposition, Hackley may very well have also admitted to withholding the chandelier over the rendering bill, except that he improperly invoked the Fifth Amendment. Defendants already had testimony from Chalk that Hackley voided LVL X's PGP permit because LVL X did not pay for the rendering. Hackley even testified that he could have told this to Chalk.

Defendants also did not mischaracterize testimony in support of their arguments. Defendants do not believe there is any misunderstanding that they had a right to use the PGP drawings. The misunderstanding, if any existed, derived from Hackley's contract, which he drafted, and that did not contain any restrictive AIA, or other, language, and from Hackley's conduct, i.e. obtaining a permit, or permission, for LVL X to use the PGP drawings. Hackley gave the impression that it didn't matter if his contract/conduct created a misunderstanding.

No objection was made to defense counsel's question as to what purpose Hackley is retaining attorney Dore (Hackley admitted to retaining him to collect the rendering invoice). Even though no objection was made, defendants submit that Hackley testifying that he retained attorney Dore to collect the rendering invoice is not protected by any privilege.

Hackley testified that he withheld from, or failed to disclose to, LVL X, the county required revisions to the PGP drawings, page E5.[5] Two sets of drawings are always needed, one for the permit office and an identical one for the construction site. Hackley obtained the

---

[5] Hackley, pages 432 (lines 18-22) and 432 (lines 1-11):
Q: Is it your testimony that you withheld E5 from Level 10?
A: No, I did not withhold sheet E5 from Level 10.
Q: I mean the final revisions that you kind of talk about that the County wanted, what page number was that?
A: **E5**.
Q: That was provided to Level 10? A: When?
Q: The final revisions of E5? A: When?
Q: At any time. A: I think we provided in discovery.
Q: No, I'm talking about sometime in May or June of 2002.
A: **No, they were not provided to Level 10.**

PGP permit specifically for LVL X to use the PGP drawings, but then withheld the construction set. The permit office's testimony is consistent with this and that Hackley voided LVL X's PGP permit over money. He interfered with the very right he sold LVL X.

On damages, defense counsel mistakenly cited to page 555, instead of the case at 552, or *Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp., 453 F.2d 552 (1972)*. The four part test that plaintiffs argue about on pages 9 and 10 is not applicable to defendants' motion in that defendants are seeking, the least severe of sanctions, and are not seeking dismissal as a sanction. The sanction defendants seek are appropriate in this case.

                              Respectfully submitted,

                              _____/s/_____
                              Christopher M. Johns, Esq.
                              P.O. Box 975, Laurel, MD 20707
                              Telephone: 301-674-6900
                              Facsimile: 301-540-5901
                              Bar No.: 15677

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 08-12-03, I caused a copy of the foregoing paper to be served to: Deborah Westervelt, 10 North Calvert Street, Suite 153, Baltimore, MD 21202 and Terrence McShane, 1211 Connecticut Ave., N.W., Suite 425, Washington, D.C. 20036.

                              _____/s/_____
                              Christopher M. Johns