IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL HACKLEY ARCHITECTS,   *
P.C. AND MICHAEL HACKLEY,
                                    *

       Plaintiffs,
                                    *

V.
                                    *      CASE NO: JFM 02 CV 3363

LVLX, INC., JOHN LEE,
COMMERCIAL FINISH GROUP,     *
INC., JEFFREY WAY, AND
JOHN TROUTON,                   *

       Defendants.          *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS MICHAEL HACKLEY AND MICHAEL HACKLEY ARCHITECTS, P.C.'S MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.      Table of Authorities……………………………………………………..…i, ii, iii

II.     Introduction…...…………………………………………………………...1

III.    Background…...……………………………….…...……………………….2

IV.     Summary of Defendants' Argument…….....………………………………..5

V.      Reply to Defendant's Argument…………...…………………………….....6

        A.      Standard for Summary Judgment.........................................................6

        B.      Disputed Facts......................................................................................7

        C.      Validity of Copyright Registration.......................................................7

                1.      Ownership...................................................................8

                2.      Copyright Application................................................10

                3.      Derivative Works.......................................................11

                4.      Copyright Notice.......................................................12

        D.      No Implied License.............................................................................13

        E.      Inflammatory Allegations of Fraud, Theft, and Extortion...................14

                1.      The Electronic Rendering...........................................14

                2.      False Copyright Application........................................16

                        a.      Architectural Works........................................16

*Hackley v. LVL X, Inc. et al.*
*Opposition to Defendants'*
*Motion for Summary Judgment*

    b.  Derivative Work.................................................................17

   3.  The Chandelier...............................................................18

   4.  Alleged Extortion...........................................................20

  F.  The Contract............................................................................21

  G.  Course of Dealing....................................................................22

  H.  Copyright and Lanham Act.....................................................22

  I.  Damages...................................................................................23

**VI.**  **Conclusion**…………………………………..…………………………………25

*Hackley v. LVL X, Inc. et al.*
*Opposition to Defendants'*
*Motion for Summary Judgment*

# TABLE OF AUTHORITIES

## CASES

Adickes v. S.H. Kress & Co., 398 U.S. 144 ....................................................................6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)…………………………………………...6

Arndstein v. McCarthy, 254 U.S. 71 (1920)..................................................................20
.
Bandag Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903 (Fed. Cir. 1984)................................13

Celotex Corp. v. Catrett, 106 U.S. 2548 (1986)…………………………………………………..6

Diesel v. Town of Lewisboro, 232 F.3d 92 (2nd Cir. 2000)...........................................................7

Durham Industries, Inc. v. Tomy Corp., 630 F.2d 905 (2nd Cir. 1980)........................................12

Eckes v. Card Prices Update, 736 F.2d 859 (2nd Cir. 1984)........................................................17

Entertainment Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211 (9th Cir. 1997)................................................................................................................................12

ETS-HOKIN v. Skyy Spirits, Inc., 225 F.3d 1068 (9th Cir. 2000)..................................................7

Harris v. Emus Records Corp., 734 F.2d 1329 (9th Cir. 1984).....................................................17

Hoffman v. United States, 341 U.S. 479 (1951)...........................................................................19

I.A.E., Inc. v. Shaver, 74 F.3d 768 (7th Cir. 1996)...........................................................13, 21, 22

In re Master Key Litigation, 507 F.2d 292 (9th Cir. 1974)............................................................20

Insurance Co. of N. Am. v. Genstar Stone Prods. Co., 338 Md. 161 (1994)..................................8

Johnson v. Jones et al., 149 F.3d 494 (6th Cir. 1998)………………….……………………14, 21, 22

Kastigar v. United States, 406 U.S. 441 (1972)...........................................................................19

i

Kunycia v. Melville Realty Company, Inc., 755 F.Supp. 566 (DCSDNY 1990)....................17, 21

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)…………………….…...6

McCarthy v. Arndstein, 262 U.S. 355 (1923)...............................................................................20

McLain v. Carolina Power & Light, 172 F.Supp. 273 (EDSC 1959)...........................................11

Miller v. Federal Deposit, Ins. Corp., 906 F.2d 972 (4th Cir. 1990)...............................................6

National Labor Relations Board v. McClure Associates, Inc., 556 F.2d 725 (4th Cir. 1977)…....11

Nelson-Salabes, Inc. v. Morningside Development, L.L.C., et al.,
284 F.3d 505 (4th Cir. 2002)........................................................................................................13

Pannu v. Storz Instruments, Inc., 106 F.Supp. 2d 1304 (S.D. Fla. 2000)…………………….…...6

Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417 (1984).............................23

The Yankee Candle Company v. New England Candle Company, Inc., 29 F.Supp.2d 44
(D.Mass.1998)...............................................................................................................................17

Three Boys Music Corporation v. Bolton, 212 F.3d 477 (9th Cir. 2000).......................................17

U.S. v. Bronston, 453 F.2d 555 (1972)....................................................................................23, 24

United States v. Seavers, 472 F.2d 607 (6th Cir. 1973)................................................................20

Yankee Candle Co. v. New England Candle Co., 14 F.Supp. 2d 154 (D.Mass. 1998)................17

Yurman Design, Inc. Paj, Inc., 262 F.3d 101 (2nd Cir. 2001).................................................7, 11

*Hackley v. LVL X, Inc. et al.*
*Opposition to Defendants'*
*Motion for Summary Judgment*

## <u>STATUTES AND RULES</u>

17 U.S.C.A. §101.........................................................................................................16

17 U.S.C.A. §102.........................................................................................................16

17 U.S.C.A. §204(a)......................................................................................................21

17 U.S.C. §401 (a)…………………………………………………………….…..…12

17 U.S.C. §401 (d).......................................................................................................12

17 U.S.C.A. §§504 (c)(2).............................................................................................25

17 U.S.C.A. §505.........................................................................................................25

Fed. R. Civ. P. 56(c)......................................................................................................6

Fed. R. Evid. 705…………………………………………………………….…………24

Fed. R. Evid. 804(b)(1)…………………………………………………………….…11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL HACKLEY ARCHITECTS,     *
P.C. AND MICHAEL HACKLEY,

                               *

       Plaintiffs,

                               *

V.

                               *      CASE NO: JFM 02 CV 3363

LVLX, INC., JOHN LEE,
COMMERCIAL FINISH GROUP,       *
INC., JEFFREY WAY, AND
JOHN TROUTON,                *

       Defendants.         *

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFFS MICHAEL HACKLEY AND MICHAEL HACKLEY ARCHITECTS, P.C.'S MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

       Plaintiffs, Michael Hackley and Michael Hackley Architects, P.C., hereby oppose Defendants'

Motion for Summary Judgment.  Defendants' Motion and supporting Memorandum regarding the

Copyright Infringement Count present factual representations and arguments that belie a wealth of

disputed issues of material fact.  For the reasons explained below, Defendant's are not entitled to

Summary Judgment on these facts.

## I.      INTRODUCTION

       Plaintiffs filed a Motion for Summary Judgment on the Lanham Act Count only (Count II of

Plaintiffs' Complaint), as there are clearly no questions of material fact with regard to the elements of

1

false designation of origin. Defendants filed an Opposition to Plaintiffs' Motion for Summary Judgment on the Lanham Act Count and a Cross-Motion for Summary Judgment on what appears to be both counts of Plaintiffs' Complaint, with a combined memorandum in support of both pleadings. Plaintiffs timely filed their Reply to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment on Count I. This Memorandum supports Plaintiffs' Opposition to Defendants' Motion for Summary Judgment.

## II.     BACKGROUND

From 1998 to 2002, Michael Hackley designed thirteen stores bearing the tradename LVL X, LEVEL 10, or both for John Lee and/or LVL X, Inc. Michael Hackley designed the first and second Prince George's Plaza LVL X store. [**Exhibit A**, Deposition of John Lee, page 116, line 9 – page 117, line 18; **Exhibit B**, Defendants LVL X, Inc. and John Lee's Answers to Plaintiffs' First Set of Interrogatories, Interrog. No. 15.] The second Prince George's Plaza store is the subject of this action.

On May 16, 2002, plaintiff Hackley applied for a permit for the Prince George's Plaza LVL X store ("PGP2 store") and on May 21, 2002, Permit No. 16554-2002-00 was issued to plaintiffs. [**Exhibit C**, Deposition of Kashanian, page 8, lines 2-12.]

On June 6, 2002, John Lee telephoned Michael Hackley and informed him that he was terminating the services of Michael Hackley Architects, P.C. [**Exhibit D**, Deposition of John Lee, page 171, line 18 - page 172, line 10.]

On June 7, 2002, Michael Hackley sent a letter to John Lee confirming that Michael Hackley Architects, P.C. would be stopping work on LVL X, Inc. outstanding projects until payment was made. [**Exhibit E**, Deposition of Michael Hackley, page 148, lines 16- page 149, line 5.]

2

On June 12, 2002, defendant LVL X presented a set of plaintiffs' drawings, with the architect's name and address redacted, to the Prince George's County Department of Environmental Resources. On June 13, 2002, defendants LVL X obtained a second permit for the PGP2 store, thereby rendering the permit plaintiffs obtained on May 21, 2002 moot. [**Exhibit F**, Deposition of Malinda Steward, page 92, line 6 – page 93, line 22; **Exhibit G**, Permit No. 16554-2002-01.]

On June 21, 2002, Michael Hackley rescinded the May 21, 2002 permit.[Defendants' Memorandum Exhibit 17.]

Prince George's County revoked the 16554-2002-01 permit. [**Exhibit H**, Deposition of Malinda Steward, page 92, line 6 – page 93, line 22.]

On July 8, 2002, plaintiff Hackley wrote to counsel for Commercial Finish Group, Inc. (the general contractor on the PGP2 project and once a party to this action) confirming that plaintiffs owned the drawings and the withdrawal of permission to use the drawings. [Defendants' Memorandum Exhibit 6.]

On July 25, 2003, plaintiffs filed their copyright application for the architectural works. Said copyright application resulted in Copyright Registration  No. VAu 562-698. [**Exhibit DD**, Copyright Registration.]

On July 25, 2003, defendants John Lee and LVL X, through their agent presented a set of plaintiffs' drawings, with the name and address redacted, and defendant Way's signature and architect seal to Prince George's County for permit.  [**Exhibit I**, Deposition of Jeffrey Way, page 19, lines 13 – 18.]

On August 30, 2002, defendants John Lee and LVL X, through their agent, presented a set of drawings created by architect John Trouton to Prince George's County for permit and a permit was

3

obtained. [**Exhibit K**, Trouton Permit.] Plaintiffs allege that the Trouton drawings infringe plaintiffs' copyright.

On August 30, 2002, plaintiffs, by their undersigned counsel, wrote to defendants informing them of their copyright infringement. [**Exhibit L**, Correspondence from plaintiffs' counsel.]

On September 13, 2002, defendants, by their undersigned counsel, denied infringement. [**Exhibit M**, Correspondence from Defendants' counsel.]

On information and belief, the PGP2 store opened for business in September 2002. The opening date was requested from defendants in discovery and not produced. [**Exhibit N**, Deposition of John Lee.] The PGP2 store remains open.

On October 11, 2002, plaintiffs filed their Complaint for copyright infringement and false designation of origin.

Plaintiff Hackley filed a complaint with the Maryland Board of Architects against defendant Jeffrey Way. [**Exhibit O**.]

On March 26, 2003, the Maryland Board of Architects issued a consent order regarding the Jeffrey Way complaint, finding defendant Way in violation of Business Occupations and Professions Article, Maryland Annotated Code, §§3-501(a) and Code of Maryland Regulations 09.21.01.07A and B and 09.21.01.07-1. [**Exhibit P**, Consent Order.]

On April 14, 2003, defendant Lee filed a complaint against plaintiff Hackley with the Maryland Board of Architects. [**Exhibit Q**, Lee Complaint.]

In May 2003, defendant Lee filed criminal charges against plaintiff Hackley for theft of a chandelier.

4

The Maryland Board of Architects dismissed the complaint against Plaintiff Hackley. [**Exhibit R.**]

On July 18, 2003, the criminal theft case resulted in a nolle prosequi as the prosecutor deemed the case a contractual dispute. [**Exhibit S**, Nolle Prosequi; **Exhibit AA**, Correspondence to state prosecutor. ]

On July 15, 2003, plaintiffs filed their Motion for Summary Judgment on the Lanham Act Count.

On July 29, 2003, defendants filed their Cross Motion for Summary Judgment.

## III.     SUMMARY OF DEFENDANTS' ARGUMENT

Defendants' Motion raises a plethora of disputed issues of material fact that preclude a grant of summary judgment.   In reading defendants' memorandum in support of their Motion for Summary Judgment, it is difficult to determine what indeed the defendants' arguments are.  We have made a good faith effort to organize the arguments so that we can properly address our opposition to those arguments. It appears that defendants make the following arguments:

Defendants allege that they paid for the Hackley drawings and therefore, Hackley does not own the drawings. Defendants allege that Hackley's Copyright in the drawings is invalid. Defendants allege that they had an irrevocable non-exclusive right (license) to use the drawings. Defendants allege fraud, extortion and theft. Defendants allege that plaintiffs are not entitled to damages.

*Hackley v. LVL X, Inc. et al.*
*Opposition to Defendants'*
*Motion for Summary Judgment*

## IV.     REPLY TO DEFENDANT'S ARGUMENT

Defendants' Motion and supporting Memorandum present bald allegations and uncorroborated inflammatory accusations, unsupported by any facts, and factual representations and arguments that are a wealth of disputed issues of material fact, as highlighted below.

### A.  Standard for Summary Judgment

Under Rule 56, the Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue as to any material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, at 323 (1986).  As stated in Pannu v. Storz Instruments, Inc., 106 F. Supp.2d 1304 (S.Fla. 2000), the Court should not grant summary judgment unless it is clear that a trial is unnecessary, and any doubts in this regard should be resolved against the moving party (citing Adickes v. S.H. Kress & Co., (398 U.S. 144.))  Material facts are those facts whose determination will affect the outcome of a suit, and a dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, at 248 (1986).  Further, disposition by summary judgment is appropriate when the evidence, taken as a whole and viewed in the light most favorable to the party opposing the motion, could not lead a rational trier of fact to find for the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986). "Summary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." Miller v. Federal Depsoit

6

Ins. Corp., 906 F.2d 972 at 973 (4th Cir. 1990) There are no facts, let alone undisputed facts, upon which this Court may properly grant summary judgment for defendants at this stage.

### B.    Disputed Facts

Defendants move this Court to enter Summary Judgment in their favor based on a plethora of disputed facts.  These disputed facts can be summarized into the following categories and are explained in detail in the following sections.

?    Ownership of the drawings

?    Payment for the drawings

?    Derivative works

?    Implied license

?    Damages

### C.    Validity of Copyright Registration

Under the Copyright laws, the registration of a copyright certificate constitutes prima facie evidence of the validity of a copyright.  The copyright certificate shifts to the defendant the burden to prove invalidity of the plaintiff's copyright.  ETS-HOKIN v. Skyy Spirits, Inc., 225 F.3d 1068 (9th Cir. 2000) Defendants have failed to do so.  An alleged infringer of a copyright bears the burden of proving the invalidity of a registered copyright and is required to show that there is such an overwhelming amount of evidence of nonoriginality that reasonable and fair minded men could not find the copyrighted work to be original.  Yurman Design, Inc. v. Paj, Inc., 262 F.3d 101, at 109 (2nd Cir. 2001); Diesel v. Town of Lewisboro, 232 F.3d 92, at 103 (2nd Cir. 2000).

7

### 1.    Ownership

Defendants' argument that they paid for the drawings is based on the premise that the copyright protected drawings were for sale.  It is very clear in the previous written contracts between the parties (written contracts were only created for the first four stores that plaintiffs designed for defendants), that plaintiffs were selling services and not drawings. [Defendants' Memorandum Exhibit 1]  Even if this Court should decide that the drawings were for sale, defendants' self-serving allocations of their payments is a question of fact for the trier of facts.  Defendants' Memorandum Footnote 32 is not in evidence and is merely defendants' self-serving interpretation of their version of the facts.

Defendants allege that LVL X was induced to pay plaintiffs $10,000, because "plaintiffs agreed that said $7,500 of it would pay the remaining balance for the PGP drawings." [Defendants' Memorandum, page 5]  In support of this allegation, defendants proffer the May 20, 2002 invoice annotated by defendant Lee [Defendants' Memorandum Exhibit 10] and defendant Lee's self-serving affidavit. [Defendants' Memorandum Exhibit 2].   Plaintiff Hackley has testified under oath in his deposition that plaintiffs did not agree that $7,500 would pay the remaining balance for the PGP drawings. [**Exhibit T**, Deposition of Hackley, page 151, lines 5 – 18.] Clearly, this is a disputed fact and summary judgment is not appropriate.  Moreover, prior course of conduct regarding payments to plaintiffs shows that LVL X identified the purpose of the payment in the memo field of the check. [**Exhibit U**, checks produced in discovery]  If LVL X meant for the $7,500 to be applied to the PGP drawings, they could have said so on the check. They did not. [Defendants' Memorandum Exhibit 4.] An important fact that defendants conveniently leave out of their analysis is that on May 28, 2003 when LVL X paid $10,000 to plaintiffs, the outstanding balance due by LVL X to plaintiffs was $25, 347.13.

8

[**Exhibit V**.]  The $10,000 was properly applied to the oldest outstanding invoices, which included the rendering.  Per Maryland law, absent the purpose of the payment annotated on the check, the payment is applied to the oldest outstanding invoices first.  *See* Insurance Company of North America v. Genstar Stone Products Company, 656 A.2d 1232, at 1245 (Md. 1995.) This in fact is what plaintiffs did.  In addition, if, as defendants allege, plaintiffs agreed that $7,500 would pay the remaining balance for the PGP drawings, it is incongruous that plaintiffs would write a check for $10,000.

Defendants allege that plaintiffs' June 7, 2003 letter, [Defendants' Memorandum Exhibit 14], reflects his agreement to apply $7,500 of LVL X's $10,000 check to the PGP drawings.  [Defendants' Memorandum, page 5].  Plaintiffs maintain that the letter does not reflect such an agreement, but provides a notice of the outstanding balance of $14,283.09 after the $10,000 payment was applied, along with specific comments about projects that defendant Lee had questioned, i.e., the electronic renderings and the Paramus Park Mall design and drawings. These are clearly disputed facts for the trier of fact to decide.

In an attempt to justify not paying monies owed to plaintiffs, defendants allege that plaintiffs' invoice should be reduced by the electronic rendering invoice and the Paramus Park retainer. Defendants further allege that they did not want to retain plaintiffs for Paramus Park, when in fact, they had already retained plaintiffs for Paramus Park and plaintiffs had begun work.  [Defendants' Memorandum Exhibit 14.]

In a ridiculous attempt to show that LVL X paid Hackley for the drawings, defendants claim that LVL X overpaid plaintiffs and plaintiffs owe defendants. Defendants use the May 20, 2003 invoice as a starting point for their misinterpretation of the facts.  When in fact, plaintiffs sent defendants a later invoice dated June 7, 2003, which more accurately reflects the monies owed by LVL X. [**Exhibit W**]  In

9

an attempt to support their argument, defendants list a number of items in footnote 32 of Defendants'
Memorandum.  This self-serving list, not in evidence, includes, among other things, payment for the
infamous chandelier, which defendants now have in their possession; two chandeliers, which plaintiffs
credited because they were not bought; construction administration services which were provided by
plaintiffs, etc.  Apparently, defendants believe that they do not have to pay for services rendered simply
because they say so.

Defendants mischaracterize plaintiff's testimony regarding a misunderstanding on whether LVL
X owned the drawings.  Defendants claim that "Hackley says there was a misunderstanding…".
Indeed, the testimony that defendants cite clearly shows that plaintiff stated, when led by defense
counsel, that "I guess there could be a misunderstanding." [Defendants' Memorandum, Footnote 5.]
Guessing there could be a misunderstanding and stating there is a misunderstanding are very different
statements.  Summary judgment should not be granted on the basis of the disputed facts upon which
defendants rely.

### 2. Copyright Application

Plaintiffs filed their copyright application for architectural works; i.e., the original design of a
retail store space.  Defendants' allegation that the Hackley drawings were not used to build the store
goes to the heart of this action.  Defendants copied plaintiffs' original architectural design of the Prince
George's Plaza LVL X store by copying the drawings.

The defendants make note that the title in the copyright application is "LVL X", with the PGP
address.  A title must be provided on a copyright application and the name and location of the store
identifies the work.

10

### 3.    Derivative Works

Defendants allege that plaintiffs' work is a derivative work.  In support of this allegation, they

purport that plaintiff derived the cash wrap from the "Le Corbusier" table and TV towers from the

general contractor's employee Ron Reece.   Plaintiffs disagree and further, object to defendants' use of

an affidavit by Ron Reece as plaintiffs have not had an opportunity to cross examine the witness.

National Labor Relations Board v. McClure Associates, Inc., 556 F.2d 725 (4th Cir. 1977) The affidavit

is hearsay and does not comply with Rule 804(b)(1) of the Federal Rules of Evidence as an exception. In

McLain v. Carolina Power & Light, 172 F. Supp. 273 (EDSC, 1959), the court denied a motion for

summary judgment wherein the movant offered an affidavit in support of its motion. The McLain court

stated, "The issue thus tendered by the defendant is not one that should be too readily disposed of on

affidavits.  It can be better considered and disposed of after the witnesses have been subjected to cross

examination.  Too often in affidavits facts are so jumbled with conclusions as to make it quite difficult

to determine which is not the other."   In the present case, as in McLain, the facts are jumbled with

conclusions.

The court in Yurman determined that the Yurman jewelry was not a derivative work in spite of

the defendant proffering other jewelry with twisted cable and gemstones (elements of the Yurman

design.)  The court found that the originality in the Yurman design inheres in the way Yurman "recast

and arranged those constituent elements."   Yurman Design, Inc. v. Paj, Inc., 262 F.3d 101, at 110 (2nd

Cir. 2001) In the present case, as in Yurman, plaintiffs' copyright inheres in the totality of the design

and in the arrangement of the constituent elements, and not in two of the individual elements, i.e., the

cash wrap and the TV towers.

11

Even if the leap is taken to deem the Hackley drawings a derivative work of the "Le Corbusier" table, the drawings would be copyrightable as derivative works. To support a copyright, the original aspects of a derivative work must be more than trivial, and the original aspects of the derivative work must reflect the degree to which it relies on preexisting material and must not affect the scope of copyright protection in that preexisting material. <u>Durham Industries, Inc. v. Tomy Corp</u>., 630 F.2d 905, at 909 (2<u>nd</u> Cir. 1980); <u>Entertainment Research Group, Inc. v. Genesis Creative Group, Inc</u>., 122 F.3d 1211, at 1220 (9th Cir. 1997) Clearly, the original aspects of the Hackley drawings are more than trivial. In addition to the obvious fact that the "Le Corbusier" table is a table and Hackley's cash wrap is a cash wrap, there are other differences between the cash wrap and the table, such as the size, shape of components, finishes, color, material, etching, and intended use. Moreover, the cash wrap is but one element in the Hackley design and as such, the degree to which they rely on the "Le Corbusier" table is de minimus, if at all. There are clearly issues of disputed material facts with regard to whether the plaintiffs work is derivative and therefore, summary judgment is inappropriate.

### 4. Copyright Notice

Defendants make much of the fact that plaintiffs did not include the copyright notice on their drawings. However notice of copyright is not required. 17 U.S.C. §401(a) ("Whenever a work protected under this title is published in the United States or elsewhere by authority of the copyright owner, a notice of copyright as provided by this section *may* be placed on publicly distributed copies...") A copyright notice merely precludes a defense of innocent infringement. 17 U.S.C. §401(d).

*Hackley v. LVL X, Inc. et al.*
*Opposition to Defendants'*
*Motion for Summary Judgment*

### D.     No Implied License

It appears that defendants allege that Hackley has not raised any genuine issue of material fact against a finding that Hackley created a non-exclusive license to use the drawings.  Because the existence of an implied license is an affirmative defense to infringement, the burden is on the party asserting the defense, not the opposing party, to show a non-exclusive license exists. Once the accused infringer puts on evidence to show a non-exclusive license, the burden shifts to the plaintiff to show that no such license exists. *See* I.A.E., Inc. v. Shaver, 74 F.3d 768, at 776 (7th Cir. 1996). *See also*, Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903 (Fed. Cir. 1984). Defendants have not made this showing and instead, attempt to shift the burden to plaintiffs to show the absence of an implied license. The Fourth Circuit has set forth factors to consider when determining whether an implied license exists: (1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts, such as the standard AIA contract, providing that copyrighted materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible. The court should examine the totality of the circumstances surrounding the plaintiffs' conduct in assessing the presence or absence of an implied license.  Nelson-Salabes, Inc. v. Morningside Development, L.L.C., et al., 284 F.3d 505, at 514 (4th Cir. 2002).  In the present case, contrary to defendants' assertion that there was no business relationship between the parties, plaintiffs had designed thirteen stores for defendants and had started work on yet another store. [**Exhibits A and B**.] Clearly, four years is a long-term relationship between the parties and plaintiff had no reason to believe that the relationship would not continue. Plaintiffs did not use the standard AIA contract expressly claiming

13

*Hackley v. LVL X, Inc. et al.*
*Opposition to Defendants'*
*Motion for Summary Judgment*

ownership. However, plaintiffs' proposal agreement clearly states that the agreement is for professional services and not for the purchase of drawings.[Defendants' Memorandum Exhibit 1] Lastly, plaintiffs' conduct did not indicate the grant of permission to use the drawings. Indeed, plaintiffs expressly withdrew any permission that may have been deemed granted. [Defendants' Memorandum Exhibit 6.]

To demonstrate an implied license to use the copyrighted material, defendant must show that plaintiff intended defendant to have a license to use the copyrighted material. Johnson v. Jones, 149 F.3d 494, at 502 (6th Cir. 1998). "Without intent, there can be no implied license." Id. Clearly, plaintiffs' actions show that they did not intend an implied license. The existence, or not, of an implied license in the present case is therefore a disputed fact, which cannot be disposed of on summary judgment.

### E.    Inflammatory Allegations of Fraud, Theft and Extortion

Defendants make wild allegations of a fraudulent rendering bill, a fraudulent copyright application, and theft and extortion in a desperate attempt to prevail on its summary judgment motion. Defendants' allegations of fraud are clearly overreaching  and a transparent attempt to attack plaintiff Hackley's integrity.

### 1.    The Electronic Rendering

With regard to the purported fraudulent rendering, the contract under which the parties were acting [Defendants' Memorandum Exhibit 1] clearly states that "providing additional colored renderings" is an additional service provided if requested.  There is no discussion of fees for such service.  It had been established by the parties and the course of conduct between the parties was such that additional services were paid as billed.  Many previous invoices included additional services

14

without a breakdown of fees and those invoices were paid by defendants without question. [**Exhibit X**.] After four years and thirteen stores, an additional service without a breakdown of charges was a matter of course. Moreover, at the time the rendering was invoiced, plaintiffs had designed thirteen stores for defendants and there were three more in the queue. Plaintiff had no reason to believe that the business relationship between plaintiffs and defendants would not continue. It is difficult to imagine that anyone would generate a fraudulent invoice to an ongoing client and jeopardize the business relationship and future income. Lastly, with regard to the purported "fraudulent invoice", plaintiffs invoiced the rendering in May 2002, [**Exhibit Y**.] and the first time that plaintiffs were aware that there was a question on the invoice was when defendants made the allegations in the present case. There were never any attempts by defendant Lee to discuss any dissatisfaction with the billing with Mr. Hackley. Moreover, plaintiffs never saw the invoice with defendants' annotations on it [Defendants' Memorandum Exhibit 10] until defendants produced it in discovery. More than ten months had passed from the time the rendering was invoiced before plaintiffs were aware there was an alleged dispute. Plaintiff Hackley testified that the $8,000 fee for the renderings included a $3,000 fee for the draftsman, the cost of the software, and a fee for plaintiff Hackley's time. [**Exhibit Z**, Deposition of Michael Hackley.]

Plaintiffs considered $8,000 a reasonable fee for the renderings. Even if LVL X considers the fee unreasonable, then they may deem the invoice overstated, but it is a giant leap to label the invoices as fraudulent. Defendants make the statement that "Hackley doesn't deny that he currently has another attorney to collect on the rendering" [Defendants' Memorandum, page 6], citing plaintiffs deposition testimony in support of this statement. As the testimony shows, defense counsel was questioning plaintiff regarding the attorney-client relationship with James Dore, whom plaintiff had retained for his

15

defense counsel in the criminal case in which defendant John Lee had brought charges against him. Plaintiffs' uneasiness in answering the nature of the relationship is reasonable in light of the then impending criminal trial.

### 2.    False Copyright Application

### a.  Architectural Works

Defendants wrongfully allege that plaintiffs brought this case grounded on a false copyright application.  In support of this allegation, defendants provide the definition of "architectural works" set forth in 17 U.S.C.A. §101.  The Copyright Office has further clarified the §101 definition  under its SCOPE OF PROTECTION --An original design of a building embodied in any tangible medium of expression, including a building, architectural plans, or drawings, is subject to copyright protection as an "architectural work" under Section 102 of the Copyright Act, 17 U.S.C., as amended on December 1, 1990. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design but does not include individual standard features or design elements that are functionally required.  The term building means structures that are habitable by humans and intended to be both permanent and stationary, such as houses and office buildings, and other permanent and stationary structures designed for human occupancy, *including but not limited to,* churches, museums, gazebos, and garden pavilions.  The Copyright Office also identifies work specifically excluded as:

• Structures other than buildings, such as bridges, cloverleafs, dams, walkways, tents, recreational vehicles, mobile homes, and boats.

16

*Hackley v. LVL X, Inc. et al.*
*Opposition to Defendants'*
*Motion for Summary Judgment*

• Standard configurations of spaces, and individual standard features, such as windows, doors, and other staple building components, as well as functional elements whose design or placement is dictated by utilitarian concerns. Copyright Office Circular 41.  The Copyright Office has neither specifically included or excluded  retail store design as architectural works.

Defendants cite Yankee Candle Co. v. New England Candle Co., 14 F.Supp. 2d 154 (D.Mass. 1998), a Massachusetts district court case, in support of its argument. However, defendants' reliance on Yankee Candle is  invalid, as that case was *vacated* and is not good law. The Yankee Candle Company v. New England Candle Company, Inc., 29 F.Supp.2d 44 (D.Mass.1998).  Therefore, it has never been decided and is a case of first impression whether or not retail store design is architectural works protected by § 102 of the Copyright Act, 17 U.S.C.


### b.  Derivative Work

As explained above, plaintiffs maintain that their design is not a derivative work as defined by the Copyright Act.  However, even if plaintiffs work is deemed to be a derivative work, defendants go too far in its allegation of a false copyright application.  "Absent intent to defraud and prejudice, inaccuracies in copyright registrations do not bar actions for infringement." Three Boys Music Corporation v. Bolton, 212 F.3d 477 (9th Cir. 2000), citing  Harris v. Emus Records Corp., 734 F.2d 1329 (9th Cir. 1984); Kunycia v. Melville Realty Company, Inc., 755 F. Supp. 566 (SDNY, 1990) (An omission in block 6 (derivative work) on the copyright application, if innocently made, and which would not have affected the Copyright Office decision, will not invalidate plaintiff's copyright application.) *See also*, Eckes v. Card Prices Update, 736 F.2d 859, at 861 (2nd Cir. 1984).

*Hackley v. LVL X, Inc. et al.*
*Opposition to Defendants'*
*Motion for Summary Judgment*

### 3.    The Chandelier

Defendants accuse plaintiff of wrongfully withholding or steeling (sic) their chandelier. Defendants allege that Plaintiff Hackley improperly invoked the Fifth Amendment and unfairly prejudiced defendants' attempt to further show that LVL X had paid Hackley for the drawings at issue. [Defendants' Memorandum, page 6.]   As plaintiff Michael Hackley stated under oath in his Supplementary Response to Interrogatory No. 10 [Exhibit 12 to Defendants' Memorandum in Support of its Motion], he did not turn over the chandelier, paid for by LVL X, Inc., to LVL X, Inc. because LVL X, Inc. owed plaintiffs payments for professional services rendered.  Plaintiff never intended to keep the chandelier. [Defendants' Memorandum Exhibit 12]  Pursuant to Md. Crimes and Punishment Article 27 §343(c), plaintiff acted under "a good faith claim of right to the property", and "acted in the honest belief that he had the right to exert control over the property."  Plaintiff did, however, inform LVL X, Inc., through its agent, that he would be willing to turn over the chandelier if defendant John Lee was willing to discuss the monies owed. [**Exhibit CC**, Deposition of Michael Hackley, page 154, line 21 – page 155.] This interaction occurred in June 2002 and defendants never approached plaintiffs about the chandelier until defendant John Lee filed criminal charges against defendant in May 2003, just short of one year later.

Plaintiff Michael Hackley originally objected to defendants' Interrogatory No. 10 on multiple grounds, including irrelevance.  However, even though plaintiff believed that questions regarding the chandelier are irrelevant to the present action, plaintiff agreed to respond and served his supplementary response to Interrogatory No. 10 on June 8, 2003.  Plaintiff maintains that his supplementary response to Interrogatory No. 10 is a true and accurate representation of the facts regarding the chandelier.  As defendant John Lee filed criminal charges against plaintiff with regard to his purported illegal

18

*Hackley v. LVL X, Inc. et al.*
*Opposition to Defendants'*
*Motion for Summary Judgment*

possession of the chandelier, plaintiff was required to retain separate defense counsel to represent him in the criminal case.  After plaintiff served his supplementary response to Interrogatory No. 10, his criminal defense counsel advised him to assert the privilege against self-incrimination with regard to any questions pertaining to the chandelier.  Plaintiff did, in fact, confirm in his deposition that the response to Interrogatory No. 10 was true, accurate and complete to the best of his knowledge.  However, as instructed by his criminal defense attorney, he properly invoked his Fifth Amendment privilege when counsel for defendants asked additional questions regarding the chandelier. As Mr. Hackley had already stated that he had an attorney-client relationship with Mr. Dore (plaintiffs' criminal defense attorney), counsel attempted to thwart the asserted attorney-client privilege by asking the purpose of the attorney-client relationship and inferring the purpose. [Defendants' Memorandum, Footnote 10.]  The criminal trial was scheduled to be held on July 17, 2003, but resulted in a <u>Nolle Prosequi</u> on that date. [**Exhibit S.**]  Contrary to defendants' assertions, the criminal case resulted in a Nolle Prosequi because the prosecutor deemed the case a contractual issue.  [**Exhibit AA.**]  The chandelier was subsequently returned to LVL X, Inc. [**Exhibit BB**.]  Nevertheless, at the time plaintiff's deposition testimony was taken on June 16 and 17, 2003, the criminal charges were outstanding against plaintiff, a trial was scheduled, and he was faced with the dire threat of standing trial, potential imposition of fines or incarceration, with the possible consequences of losing his architecture license and hence, his livelihood. Thus, plaintiff's assertion of the Fifth Amendment was both proper and justified.  "Invoking the 5th amendment is such an important right, the privilege against self incrimination can be invoked in any proceeding where the witness 'reasonably believes that his testimony could be used in a criminal prosecution or could lead to other evidence that might be so used.'" <u>Kastigar v. United States</u>, 406 U.S. 441 (1972).  See also, <u>Hoffman v. United States</u>, 341 U.S. 479 (1951) (The privilege against self

19

incrimination as embodied in the fifth amendment "must be accorded liberal construction.") The circuits have also held that waiver does not occur where further disclosure carries a risk of incrimination beyond that raised by the previous testimony. See United States v. Seavers, 472 F.2d 607 (6th Cir. 1973); In re Master Key Litigation, 507 F.2d 292 (9th Cir. 1974).

In the Arndstein cases, [Arndstein v. McCarthy, 254 U.S. 71 (1920) and McCarthy v. Arndstein, 262 U.S. 355 (1923), the Supreme Court held, respectively, that the Fifth Amendment must have a broad construction in favor of the right which it was intended to secure [Arndstein v. McCarthy, at 73], and that if none of the witness's answers voluntarily given amount to an admission or showing of guilt, the witness is entitled to decline to answer further questions when to do so might tend to incriminate him [McCarthy v. Arndstein, at 359].

### 4.    Alleged Extortion

Defendants also falsely accuse plaintiff of extortion by "pulling LVL X's permit and shutting it down." [Defendants' Memorandum, page ??]  The record clearly shows that on June 21, 2002, Mr. Hackley rescinded permit no. 16554-2002-00 [Defendants' Memorandum Exhibit 17.], which he had obtained on May 21, 2003.  Permit No.16554-2002-00 was no longer active because LVL X had obtained a second permit, Permit No. 16554-2002-01, on June 12, 2003. [**Exhibit G**.]   Mr. Hackley did not shut LVL X down.  They continued construction under the 16554-2002-01 permit until Prince George's County, not Mr. Hackley, revoked the permit. [**Exhibit H**.]

*Hackley v. LVL X, Inc. et al.*
*Opposition to Defendants'*
*Motion for Summary Judgment*

### F.    The Contract

Defendants argue that the "agreement between LVL X and Hackley does not contain any American Institute of Architecture ("AIA") language that specifies ownership , nor that in any way restricts the use of any drawings." [Defendants' Memorandum, page 1.]   The law is quite clear that absent an express written agreement to the contrary, the author of the work is the owner of the copyright. 17 U.S.C. §204(a).

Defendants have decided to pick and choose the tasks that they include in the scope of the contract. Defendants allege that the scope of the contract was for Hackley to make "construction documents."  However, construction documents are but one task of many. [Defendants' Memorandum Exhibit 1.]  Indeed, the very first line of the contract states, "I am pleased to submit this proposal to you for *professional services*."  There is no mention anywhere that the drawings are for sale.  If the ownership of construction drawings is not provided for in the agreement between the parties, nor is it the subject of any other agreement between the parties, nor discussed by the parties, there is no agreement to purchase the drawings themselves.  <u>Kunycia v. Melville Realty Company, Inc</u>., 755 F. Supp. 566 (DCSDNY, 1990).  As in <u>Melville</u>, fees were based on services rendered and not the purchase of the drawings.  Plaintiffs charged a flat fee of $10,000 (sometimes discounted) to defendants for professional services rendered.

Defendants ask this court to look to the facts and analysis in <u>I.A.E., Inc. v. Shaver</u>, 74 F.3d 768 (7th Cir. 1996) in lieu of <u>Johnson v. Jones</u>, 149 F.3d 494 (7th Cir. 1998).  However, defendants make two errors with this request. First, plaintiffs have not used the analysis in <u>Johnson</u> for any copyright arguments, only to support their summary judgment motion on the Lanham Act count.  Second, and more importantly, the facts in <u>Shaver</u> are inapposite to the present case.  In <u>Shaver</u>, the plaintiff, after his

21

involvement in the project ended, sent copies of the drawings to the airport with a letter giving the airport permission to use his drawings. <u>Shaver</u>, at 771. In the present case, plaintiffs never gave permission to use the drawings. Moreover, unlike the present case, Shaver was clearly paid by the client.

      Defendants continuously argue that 1) the agreement does not specify Hackley owns the drawings, 2) Hackley does not restrict the use of the drawings, and 3) there is no condition precedent requiring payment to use the drawings. Once again, the drawings were not for sale and further, absent an agreement with language to the contrary, the author of the work owns the copyright. 17 U.S.C. §204(a).

### G.      Course of Dealing

      Defendants' assertion that John Lee did not have a business relationship with Hackley is wholly without merit. The facts speak for themselves. Plaintiffs designed the first LVL X store for defendants in 1998. After the first store, plaintiffs designed twelve more over a period of four years before the store that is the subject of this action. [**Exhibits A and B**.]

### H.      Copyright and Lanham Act

      Plaintiffs relied on <u>Johnson v. Jones</u>, 149 F.3d 494 (7th Cir. 1998) in their Motion for Summary Judgment on the Lanham Act count. However, to further cloud the issues, defendants attempt to contrast plaintiffs' reliance on <u>Johnson</u> to the copyright issues of <u>Johnson</u>. The elements of copyright and false designation of origin are clearly different and should not be confused. The Supreme Court

*Hackley v. LVL X, Inc. et al.*
*Opposition to Defendants'*
*Motion for Summary Judgment*

cautions against mixing the doctrines of copyright and trademark.  <u>Sony Corp. of America v. Universal City Studios, Inc</u>., 464 U.S. 417, at 439 (1984).

Plaintiffs have fully set forth their arguments regarding the Lanham Act count in their Motion for Summary Judgment on the Lanham Act count filed July 15, 2003.

### I.    Damages

Defendants allege that plaintiffs refused to testify on matters related to their claim for damages. [Defendants' Memorandum, page 22], and cite plaintiffs' deposition testimony to support this allegation. Plaintiffs maintain that refusing to tell defense counsel the amounts received pursuant to settlement agreements with the other two defendants does not constitute refusal to testify on matters related to damages.  Defendants cite <u>U.S. v. Bronston</u>, 453 F.2d 555 (1972) in support of their allegations. However, defendants' reliance on <u>Bronston</u> is misplaced.  Bronston was convicted of perjury and appealed his conviction.  In upholding the district court decision, the Second Circuit Court of Appeals held that where the defendant was unambiguously asked in bankruptcy examination simply to state whether he ever had a Swiss bank account and defendant answered that the company had an account in Zurich for six months, while that much of the answer was literally true, the jury was entitled to find the answer was intended to represent that defendant did not personally have such an account.   The court further held that the jury could have inferred that defendant willfully gave false and evasive testimony from conclusive proof of existence of the personal account, from defendant's motive to conceal assets in a bankruptcy proceeding, and the unlikelihood that a businessman would forget such an account. Without a doubt, the existence of a bank account is crucial information in a bankruptcy proceeding.

Plaintiff's refusal to disclose amounts of settlements with other defendants clearly does not rise to the same level as Bronston.

Defendants misrepresent plaintiffs' response to damages. [Defendants' Memorandum, page 22.] Plaintiffs clearly deferred answering defendants' propounded interrogatory pending an accounting. To date, plaintiffs have not received such an accounting.

Defendants proffer survey results and expert analysis of those results and ask this Court to grant summary judgment on the issue of damages, alleging that the "defendants did not benefit from any alleged infringements" [Defendants' Memorandum, page 22]  First, plaintiffs object to the admission of the survey results and analysis as plaintiffs' first knowledge of such survey was upon receipt of defendants' motion.  Plaintiffs have not seen the survey questions nor had the opportunity to cross examine defendants' proffered expert witness as required by Fed. Rule of Evidence 705.  Moreover, defendants' assertion that "defendants did not benefit from any alleged infringements" is a giant leap from defendants' unilateral survey results.  Defendants clearly have benefited because the infringing Prince George's Plaza LVL X store is open and generating revenue for defendants.

On July 8, 2002, plaintiffs informed defendants, through Commercial Finish Group, Inc., that they did not permit the use of the Hackley drawings.  [Defendants' Memorandum Exhibit 6.]  On August 30, 2002, plaintiffs, through their attorney, informed defendants that they were infringing their copyright.  [**Exhibit L**.]  Plaintiffs did not file this lawsuit until October 11, 2002.  Defendants infringed plaintiffs copyright by falsely submitting his drawings twice to Prince George's County Department of Environment and then by hiring a third architect to copy Hackley's drawings.  When thwarted in their first and second infringing attempts, they hired the third architect to create a new set of drawings copied from plaintiffs' drawings.  These actions show that defendants were clearly aware that they were

24

infringing, making their actions willful, and subject to increased damages pursuant to 17 U.S.C.A. §504(c)(2) and attorneys fees and costs pursuant to 17 U.S.C.A. §505.

**V.     CONCLUSION**

The foregoing comparison of the copyright issues raised by defendants along with plaintiffs' arguments clearly show that there are no facts, let alone undisputed facts, upon which the Court may properly grant summary judgment on the copyright infringement count at this stage. A finder of fact could easily find infringement of plaintiffs' copyright in the Hackley drawings. Therefore, defendants' Motion for Summary Judgment should be dismissed and a Proposed Order to this effect is attached.

Respectfully submitted,

Dated: August 18, 2003

_____/s/_____
Royal W. Craig (Bar No. 24,546)
Deborah J. Westervelt (Bar No. 26,282)
Attorneys for Plaintiffs
Law Offices of Royal W. Craig
10 North Calvert Street
Suite 153
Baltimore, Maryland 21202
(410) 385-2383

25

*Hackley v. LVL X, Inc. et al.*
*Opposition to Defendants'*
*Motion for Summary Judgment*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that true and correct copies of the foregoing Plaintiffs Michael Hackley

Architects, P.C. and Michael Hackley's Opposition to Defendants' Motion for Summary Judgment and

Memorandum of Law in Support thereof were furnished electronically this 18th day of August, 2003 to

the following addressees:


Christopher Johns, Esq.
P.O. Box 975
Laurel, MD 20707

Terrence Lee McShane
Lee & McShane, P.C.
1211 Connecticut Avenue N.W.
Suite 425
Washington, D.C. 20036



_____/s/_____
Deborah J. Westervelt
The Law Offices of Royal Craig
10 North Calvert Street
Suite 153
Baltimore, Maryland 21202
410.385.2383
410.385.2385 (facsimile)