IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MICHAEL HACKLEY ARCHITECTS,** \*  <br> **P.C. AND MICHAEL HACKLEY,** <br>  \* <br> Plaintiffs, <br>  \* <br> V. <br>  \*    **CASE NO: JFM 02 CV 3363** <br> **LVLX, INC., JOHN LEE,** <br> **COMMERCIAL FINISH GROUP,**  \* <br> **INC., JEFFREY WAY, AND** <br> **JOHN TROUTON,**  \* <br>  <br> Defendants.  \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS MICHAEL HACKLEY AND MICHAEL HACKLEY ARCHITECTS, P.C.'S MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Michael Hackley and Michael Hackley Architects, P.C., hereby oppose Defendants' Second Motion for Summary Judgment. Defendants' Motion and supporting Memorandum regarding Count II – False Designation of Origin present factual representations and arguments that belie a wealth of disputed issues of material fact. For the reasons explained below, Defendant's are not entitled to Summary Judgment on these facts.

**I.   INTRODUCTION AND PROCEDURAL BACKGROUND**

Previously on July 15, 2003, Plaintiffs filed a Motion for Summary Judgment on Count II – False Designation of Origin.

On July 29, 2003, Defendants filed their Opposition to Plaintiffs' Motion and their Cross-Motion for Summary Judgment on both the Copyright Count and the Lanham Act False Designation of Origin Count.  On September 5, 2003, in a hearing before this Court, Defendants' Cross-Motion for Summary Judgment on the Copyright Infringement Count was granted and Plaintiff's Motion for Summary Judgment on Count II and Defendants' Cross-Motion for Summary Judgment on Count II were denied. Following the hearing and at this Court's request, Plaintiff attempted to settle this remaining Count with Defendants with no success. On September 10, 2003, Attorney Richard Schimel entered an appearance as co-counsel for defendant LVL X, Inc.  During a status conference call with this Court on October 10, 2003, co-counsel requested additional time for Discovery and this Court granted an extension of Discovery until December 19, 2003 with a deadline of January 17, 2004 for dispositive motions.  No additional discovery was conducted and hence, no additional evidence was introduced.  However, defendants now file their Second Motion for Summary Judgment on Count II based on the same facts and same arguments as their first Cross-Motion for Summary Judgment on Count II.  There is impropriety in submitting a second motion for summary judgment *unless there has been some change of fact or law which substantially justifies the resubmission*. Yamaner v. Orkin, 313 Md. 508, 516, 545 A.2d 1345 (1988).  Unlike Yamaner, in the present case, there has been no change of fact or law. Defendants propounded no further discovery, yet filed their Second Motion for Summary Judgment on Count II based on the same underlying alleged facts.  Thus, Defendants' Motion for Summary Judgment is a duplicitous delay tactic and should be denied.

## II.    STANDARD OF REVIEW

The Court may grant Summary Judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. <u>Celotex Corp. v. Catrett</u>, 106 U.S. 2548, 2550 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, and any doubts in this regard should be resolved against the moving party.  <u>Adickes v. S.H. Kress & Co</u>., 398 U.S. 144 at 157 (1970). Material facts are those facts whose determination will affect the outcome of a suit, and a dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, at 248 (1986).  Further, disposition by summary judgment is appropriate when the evidence, taken as a whole and viewed in the light most favorable to the party opposing the motion, could not lead a rational trier of fact to find for the non-moving party.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp</u>., 475 U.S. 574 at 587 (1986). "Summary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." <u>Miller v. Federal Deposit Ins. Corp.</u>, 906 F.2d 972 at 973 (4th Cir. 1990) There are no facts, let alone *undisputed facts*, upon which the Court may properly grant defendants' second summary judgment motion.

III. PLAINTIFFS' ARGUMENT

**A.    There is False Designation of Origin because Defendants erased Plaintiff's signature from his drawings, added their own, and then presented the drawings to Prince George's County Department of Environmental Resources with the intention to obtain a permit for the space.**

Section 43(a) of the Lanham Act, 15 U.S.C. §1125, provides in relevant part that…

> (a)(1) Any person who, on or in connection with any goods or services…uses in commerce…any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion or to cause mistake, or to deceive…as to the origin…of his or her goods, services, or commercial activities by another person,…
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To establish a claim for false designation of origin, a Plaintiff must demonstrate that (1) the false designation has a substantial economic effect on interstate commerce; and (2) the false designation must create a likelihood of confusion. <u>Johnson v. Jones et al.</u>, 149 F.3d 494 (6th Cir. 1998).  Nowhere in the law is a plaintiff required to show actual confusion nor does the existence or non-existence of an implied license to use a copyrighted work allow a person to "use in commerce…a false designation of origin…that is likely to cause confusion…"  Yet, defendants continue to misconstrue the law and the facts in an effort to cloud the true issues of false designation of origin under the Lanham Act.  The requisite elements follow:

(1) **Effect on Interstate Commerce**. Michael Hackley and Jeffrey Way are both architects, who provide architecture services.  Michael Hackley is a licensed Architect in Maryland, Virginia, the

District of Columbia, Pennsylvania, Delaware, and New York and has worked in these states. [Comp. ¶ 5] Jeffrey Way is a licensed architect in Maryland and the District of Columbia. [Ex. A, Deposition of Jeffrey Way, page 9, lines 1-5]  At the direction of John Lee and upon payment of $1,200.00 from LVL X, Inc., Jeffrey Way redacted Michael Hackley's name, and then signed and sealed Michael Hackley's architectural drawings for the Prince George's Plaza LVL X store. [Ex. A, Deposition of Jeffrey Way, page 19, lines 13-18]  On July 25, 2002, Michael Hackley's drawings with Jeffrey Way's signature and seal were presented to Prince George's County Department of Environmental Resources with the intention to obtain a permit for the space.  [Ex. B, Deposition of Malinda Steward, page 68, lines 11-12; page 70, lines 2-5, and Exhibit 14 thereto (Defendants' counsel retained Exhibits for copying and has not yet distributed Exhibits to plaintiff's counsel.  Exhibit C of this Memorandum is a duplicate of the document that comprises Exhibit 14, which was subpoenaed from Prince George's County Department of Environmental Resources.)]  Moreover, the application for permit submitted with the accused drawings listed Jeffrey Way (not Michael Hackley) as the architect of record.  [Ex. D, Application for Permit.]  Jeffrey Way affixed his signature and architect seal on drawings that were created by Michael Hackley and an application for permit was filed with the Prince George's County Department of Environmental Resources with Jeffrey Way particularly identified as the architect of record. The drawings and Jeffrey Way permit were distributed to Prince George's County, which is a government authority with public access to documents.  As in Johnson, this is clearly a false designation of origin.  As Michael Hackley is a licensed architect in six jurisdictions, Jeffrey Way's seal and stamp on Hackley's drawings "hinders [Michael Hackley's] ability to conduct his interstate architecture business" and thus, affects interstate commerce.  Johnson at 501.

**(2) Likelihood of confusion**. "Likelihood of confusion is the essence of an unfair competition claim," Johnson at 502, citing Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111 at 1123 (6th Cir. 1996) (quoting Wynn Oil Co. v. American Way Service Corp., 943 F.2d 595 at 604 (6th Cir. 1991).).

In the present case, the defendant has taken the plaintiff's product and represented it to be his own work.[1]  As the court in Johnson stated, "It is difficult to imagine how a designation of origin of a product could be more false, or could be more likely to cause confusion or mistake as to the actual origin of the product." Johnson at 501.  By redacting Michael Hackley's name and placing his own name and seal on the drawings, Jeffrey Way's action would likely confuse the public to assume the drawings were his and not Michael Hackley's.  With Jeffrey Way's signature and seal affixed to the drawings, anyone that looked at the drawings would believe that they were Jeffrey Way's.

Johnson is squarely on point with the present action.  Johnson, an architect, sued another architect, Tosch, and other defendants for, among other things, false designation of origin under the Lanham Act.  In Johnson, Jones hired Johnson to design her dream house.  Johnson developed the drawings and design, and was terminated from the project.  Jones then hired Tosch to work on the project.  Tosch took Johnson's drawings, and removed his name and seal and affixed his own, and then Tosch gave the drawings to another defendant who submitted them to the city inspector.  As the court in Johnson stated, "this Court is hard-pressed to imagine what effect these actions could possibly have other than to convince anyone who looked at the plans that they were Tosch's [Way's] work.  Few are

---

[1] Michael Hackley created drawings for the Prince George's Plaza LVL X store and obtained a building permit from Prince George's County Department of Environmental Resources using such drawings.  As commissioned by John Lee and LVL X, Inc., Jeffrey Way affixed his signature and architect seal to Michael Hackley's drawings and an application for permit with Jeffrey Way identified as the architect of record was filed with these drawings .  This version of Michael Hackley's drawings

the cases demonstrating a more obvious and imminent likelihood of confusion." The court found Tosch liable under the Lanham Act for false designation of origin. <u>Johnson</u> at 503. The facts of this case could hardly be more similar. As in <u>Johnson</u>, Jeffrey Way, John Lee and LVL X, Inc. are liable under the Lanham Act for False Designation of Origin.

Defendants argue that, although lines were through Hackley's name in the title block, the name was still visible and if they intended to claim origin, they would have thoroughly removed Hackley's title blocks. This is simply a bald assertion by defendants and has no basis in fact. Lines through Hackley's name and seal on the drawings, coupled with Jeffrey Way's name and seal affixed to the drawings and Jeffrey Way's name identified as the architect of record on the accompanying application for permit clearly creates a likelihood that anyone viewing the drawings would be confused as to the ownership of the drawings. In essence, the question becomes "who is *responsible for the life, safety and welfare of the public*, as required by Maryland law, Michael Hackley or Jeffrey Way"? Business Occupations and Professions Article, Maryland Annotated Code, §3-102.

Defendants allege that the statement "For Permit Purposes Only" excuses defendants from any likelihood of confusion and false designation of origin. However, defendants have submitted no evidence that "For Permit Purposes Only" has any particular meaning in the architecture field. Indeed, the Maryland Board of Architects found Jeffrey Way in violation of Business Occupations and Professions Article, Maryland Annotated Code, §§3-501(a) and Code of Maryland Regulations 09.21.01.07A and B and 09.21.01.07-1, solely on the basis of his signing and sealing Michael Hackley's drawings. [Exhibit F, DLLR Consent Order.] Based partially on its investigation, the DLLR determined

---

with Jeffrey Way's signature and seal were submitted to Prince George's County Department of Environmental Resources to obtain a permit.

that an official from Prince George's County contacted Mr. Hackley to advise him that his drawings were being submitted under the professional seal and signature of another architect. [Exhibit F, #5.] It is impossible to imagine any circumstances other than likelihood of confusion that would prompt such a call by the Prince George's County official.

### B. There Was No Implied License to Falsely Designate Origin

Defendants allege that the scope of LVL X's license or contract with Hackley clearly included permit services or the permit process. Defendants further argue that there was no AIA language or other language precluding a subsequent architect to act within the scope of LVL X's license to use the PGP drawings to obtain a permit or "to otherwise accomplish the intended purpose of the contract." [Defendants MSJ Memorandum page 2.] Crossing out plaintiff's name as the architect of record on his own drawings and identifying Jeffrey Way by name and seal, along with a permit application listing Jeffrey Way as the architect of record are clearly not actions within the intended purpose of the contract. Moreover, defendants incorrectly cite Johnson and Shaver in support of their argument. Shaver is solely a copyright action and does not involve a Lanham Act violation. The elements of copyright and false designation of origin are clearly different and should not be confused. The Supreme Court cautions against mixing the doctrines of copyright and trademark. Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, at 439 (1984).

While not relevant to this issue, Defendants turn to the contract as clearly giving LVL X the right to terminate the agreement with Hackley. However, the termination provision that defendants rely on also includes a provision for payment of a termination fee by LVL X [See Defendants' MSJ, Ex. 1, page

3], which was never paid. Indeed, it is a disputed fact whether Michael Hackley was paid at all for his services. [Exhibit G, June 7, 2002 letter from Michael Hackley.]

### C.     Defendants' Allegation of Plaintiffs' Unclean Hands is Unfounded

Defendants argue that they are entitled to summary judgment on their unclean hands defense, and in support of this argument, they allege that plaintiff interfered with defendants' license by voiding LVL X's permit. Plaintiffs did not void the permit, but requested that Prince George's County rescind the permit. [See Defendants' MSJ Exhibit 4] Prince George's County Department of Environmental Resources, as the governing authority, rescinded the permit. On June 7, 2002, Michael Hackley sent a letter to John Lee confirming that Michael Hackley Architects, P.C. would be stopping work on LVL X, Inc. outstanding projects until payment was made. [Ex. G, and Ex. H, Deposition of Michael Hackley, page 148, lines 16- page 149, line 5.] On June 12, 2002, defendant LVL X presented a set of plaintiffs' drawings, with the architect's name and address redacted, to the Prince George's County Department of Environmental Resources. On June 13, 2002, defendants LVL X obtained a second permit for the PGP2 store, thereby rendering the permit plaintiffs obtained on May 21, 2002 moot. [Exhibit B, Deposition of Malinda Steward, page 92, line 6 – page 93, line 22; Exhibit I, Permit No. 16554-2002-01.] On June 21, 2002, only after LVL X, Inc. had obtained that second permit did Michael Hackley ask for rescission of the May 21, 2002 permit. Prince George's County then revoked the May 21, 2002 permit. [Exhibit B, Deposition of Malinda Steward, page 92, line 6 – page 93, line 22.]

Defendants further allege that Hackley breached his contractual relationship with LVL X when he caused the permit office to void LVL X's permit. However, defendants first breached the contractual relationship with Hackley by refusing to pay for the professional services rendered. [Exhibit G.]

To prevail in a defense of unclean hands in a Lanham Act infringement suit, the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims. CIBA-GEIGY Corp. v. Bolar Pharmaceutical, 747 F.2d 844 (3rd Cir. 1984). cert. denied, 417 U.S. 1137. Equity requires that those seeking its protection shall have acted fairly and without fraud or deceit as to the controversy in issue. Ellenburg v. Brockway, Inc., 763 F.2d 1091, at 1097 (9th Cir. 1985). Defendants' allegation of unclean hands, like others in this Motion, have no basis in fact. Defendants have not shown, because they cannot show, that plaintiffs acted unfairly, with fraud or deceit. Hackley's request to Prince George's County to rescind the permit associated with his drawings came only after LVL X had obtained another permit. Thus, Permit No. 16554 2002-01 (the permit obtained by LVL X on June 12, 2002) [Ex. I.], and not Permit No.16554 2002-00 (the permit obtained by Michael Hackley on May 21, 2002) was the active permit at the time that Mr. Hackley made his request to rescind his permit on June 21, 2002. Consequently, Michael Hackley's act simply does not rise to the level of "unclean hands".

### D. Jeffrey Way's Subjective Intent is Immaterial

Defendants argue that they resubmitted the drawings to Prince George's County for the purpose of obtaining a permit and not with an intent to deceive. Likelihood to confuse or deceive, not intent to deceive, is the element of false designation of origin. Whether defendants intended to deceive is immaterial.

Defendants argue that Jeffrey Way signed and sealed the drawings to comply with Maryland Code, particularly Business Occupations and Professions Article, Maryland Annotated Code, §§3-501(a), which required him to do so. [See Defendants MSJ Memorandum, page 4.] However, defendants neglect to mention that on March 26, 2003, the Maryland Board of Architects found defendant Way in violation of Business Occupations and Professions Article, Maryland Annotated Code, §§3-501(a) and Code of Maryland Regulations 09.21.01.07A and B and 09.21.01.07-1. Mr. Way signed a Consent Order to this effect. [Exhibit F, Consent Order.] As the Maryland Board of Architects ordered Mr. Way in violation of §§3-501(a) for the actions at the heart of this count, defendants' argument that his actions were required by the statute is preposterous.

### E.    Contributory Infringement

Defendants argue that CFG put lines through Hackley's name unbeknownst to LVL X, Lee and Way. [Defendants' MSJ Memorandum, page 4.] This is clearly a disputed fact as CFG, in its answers to interrogatories, specifically answered, under oath, that they did not. [Exhibit K, Interrogatory No. 18]

Regardless of who specifically lined out Hackley's name and seal, the actions were performed under the direction and control of John Lee and LVL X. In the Supreme Court ruling of <u>Inwood Laboratories, Inc. v. Ives Laboratories, Inc.</u>, 456 U.S. 844, 853 (1982), the court recognized that "liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another." The <u>Inwood</u> court noted that if a manufacturer or distributor intentionally induces another to infringe a trademark, that manufacturer or distributor is contributorily responsible for any harm resulting from the deceit. In the present case, John Lee and LVLX, Inc. controlled and directed the deceitful activities of Jeffrey Way. Jeffrey Way was contracted by LVL X, Inc. and John Lee to review,

seal and stamp his seal on the plans for the LVL X space in PG Plaza, for a fee of twelve hundred dollars ($1200.00) flat. [Ex. A, Deposition of Jeffrey Way, page 25, lines 10-18] Mr. Way admits his impression of his actions with regard to the Hackley drawings was that "he" (Michael Hackley) was a plan preparer, but that he (Jeffrey Way) "accepted their (LVL X) representation that the plans were theirs." [Ex. A, Deposition of Jeffrey Way, page 22, line 18-page 23, line 3; Ex. A, page 25, lines 10-18] Therefore, Jeffrey Way's action of signing and sealing the Hackley drawings was under the direct supervision and control of John Lee and LVL X, Inc. In this case, although Jeffrey Way's seal was stamped on the plans at issue, it was LVL X, Inc. and John Lee who contracted and agreed to pay Jeffrey Way a flat fee to stamp his seal for purposes of obtaining a permit using Hackley's drawings. [Ex. J, Deposition of John Lee, page 73 line 20 - page 74, line 21]   Although the defendants contend that Jeffrey Way's seal and signature were for permit purposes only, Jeffrey Way was listed as the Architect of record on the permit application. [Ex. B, Deposition of Malinda Steward, page 68, lines 11-12; page 70, lines 2-5, and Exhibit 14 thereto (Defendants' counsel retained Exhibits for copying and has not yet distributed Exhibits to plaintiff's counsel. Exhibit C of this Memorandum is a duplicate of the document that comprises Exhibit 14, which was subpoenaed from Prince George's County Department of Environmental Resources)] Thus, the actions of John Lee and LVL X, Inc. of hiring Jeffrey Way for the sole purpose of stamping and signing the Hackley drawings and submitting them to Prince George's County Department of Environmental Resources for permit (with Jeffrey Way listed as the Architect of Record on the permit application) clearly constitute contributory infringement for the violation of the Lanham Act, false designation of origin.

**G.   Fed. R. Evid. 408 bars the admission of settlements offered to prove liability for or invalidity of the claim or amount.**

Defendants LVL X, Inc., John Lee and Jeffrey Way proffer the amounts of the settlements between plaintiffs and two prior co-defendants, Commercial Finish Group, Inc. and John Trouton, to show their allegation of invalidity of plaintiffs' claim and amount.  See Defendants' MSJ Memorandum, page 5 and page 8.  Fed. R. Evid. 408 states: "Evidence of (1) furnishing or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount…"   The inadmissibility of settlement negotiations to foster frank discussions is necessary to support the public policy of favoring and encouraging settlement.  Wright & Graham, Federal Practice and Procedure: Evidence, §5302 (1980); Weinstein & Berger, Weinstein's Evidence, §408[1] (1986). "By preventing settlement negotiations from being admitted as evidence, full and open disclosure is encouraged, thereby furthering the policy toward settlement." United States v. Contra Costa County Water Dist., 678 F.2d 90, at 92 (9th Cir. 1982) (a settlement by the plaintiff and another defendant of a closely related claim held inadmissible).  See also, Fiberglass Insulators, Inc. v. Dupuy et al., 856 F.2d 652 (4th Cir. 1988) (excluding evidence of prior settlements between same parties).  It is the general practice of the federal courts to hold inadmissible "…the attempted use of a completed compromise of a claim arising out of the same trans action between a third person and a party to the suit being litigated."  Weinstein's Evidence, Supra, ¶ 408[04], p. 408-427 (1986).  "A defendant cannot prove the invalidity or amount of a plaintiff's claim by proof of the plaintiff's settlement with a third person…"  Young v. Verson Allsteel Press Co. 539 F. Supp 193 (ED PA 1982), citing the Advisory

Committee Note to Rule 408. Defendants are attempting to circumvent the express prohibition of Rule 408 and this proffered evidence should be ignored.

      H.     **Likelihood of Confusion**

Defendants argue that they are entitled to Summary Judgment because Mr. Kashanian at the Prince George's County Permit Office was not confused. Again, defendants misinterpret the law. The standard is *likelihood of confusion*, not actual confusion. Actual confusion is only a factor to consider in determining likelihood of confusion. Even though Mr. Kashanian testified that he was not actually confused, he was puzzled enough to contact Mr. Hackley when he received the drawings signed and sealed by Mr. Way. [Exhibit F, DLLR Consent Order, #5] The drawings and Jeffrey Way permit were distributed to Prince George's County, which is a government authority with public access to documents. Jeffrey Way's signature and seal on the drawings along with the permit application identifying Jeffrey Way as the architect of record would likely confuse anyone looking at the drawings and permit as to the origin and ownership of the drawings.

      I.     **John Lee is a Proper Party and Did in Fact Benefit**

Defendant John Lee claims that he did not benefit and was not a party to any of the dealings between LVL X and Hackley. John Lee was named a proper party and remained a proper party to this action. Repeated interrogatories and production requests to obtain LVL X ownership information was repeatedly ignored. [Exhibit L, Interrogatory No. 1.] Mr. Lee's answers in deposition were vague and unresponsive as to ownership of LVL X, Inc. and the LVL X branded stores. [Exhibit J, Deposition of John Lee, page 17, line 14 through page 19, line 20.] However, in spite of this, the evidence shows that

John Lee was the principal contact between LVL X and Hackley and it is incongruous for defendants to allege otherwise. For example, the contract cited by Defendants in their MSJ Exhibit 1 was signed by John Lee and John Lee repeatedly referred to his interactions with Michael Hackley in his deposition testimony. [Exhibit J, pages 140, 144, and 145.]

### J.     Damages

Defendants argue that plaintiffs are not entitled to damages because of their failure to provide a response on damages.  See Defendants MSJ Memorandum, page 8. To the contrary, Plaintiffs have provided their claim of damages on numerous occasions.  Plaintiffs maintain that they were never paid for the professional services rendered. As of June 7, 2002, the amount due to Plaintiffs from LVL X and John Lee was $14,283.09. The same contract that defendants allege allowed termination upon 10 days notice also required a thirty percent (30%) collection fee, 1.8 percent interest per month on the unpaid balance and a 15 percent termination fee.  [See Defendants' MSJ Exhibit 1, page 3.]   Defendants' false designation of origin was an attempt by defendants to thwart their obligation to pay plaintiffs for professional architect services provided, and the contractual amount is the minimum measure of damages.

The Lanham Act provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party.  15 U.S.C. §1117(a).  A district court may award attorney's fees based on defendant's "malicious, fraudulent, deliberate or willful infringement. <u>Roulo v. Russ Berrie & Co., Inc</u>., 886 F.2d 931 at 942 (7th Cir. 1989), <u>cert denied</u>, 493 U.S. 1075 (1990). Defendants' crossing out of plaintiffs' name and seal and applying Jeffrey Way's name and seal along with a permit application with

Jeffrey Way identified as the architect of record on Michael Hackley's drawings clearly is a deliberate act constituting false designation of origin.

## IV.   CONCLUSION

The foregoing comparison of the False Designation of Origin issues raised by defendants along with plaintiffs' arguments clearly show that there are no facts, let alone undisputed facts, upon which the Court may properly grant summary judgment on the False Designation of Origin count.  A finder of fact could easily find false designation of origin in favor of plaintiffs.  Therefore, defendants' Second Motion for Summary Judgment should be denied and a Proposed Order to this effect is attached.

Respectfully submitted,

Dated: February 2, 2004

_____/s/_____
Royal W. Craig (Bar No. 24,546)
Deborah J. Westervelt (Bar No. 26,282)
Attorneys for Plaintiffs
Law Offices of Royal W. Craig
10 North Calvert Street
Suite 153
Baltimore, Maryland 21202
(410) 385-2383

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of the foregoing Plaintiffs Michael Hackley Architects, P.C. and Michael Hackley's Opposition to Defendants' Second Motion for Summary Judgment and Memorandum of Law in Support thereof were furnished electronically this 2nd day of February 2004 to the following addressees:

Christopher Johns, Esq.
P.O. Box 975
Laurel, MD 20707

Richard E. Schimel
Budow & Noble PC
7201 Wisconsin Ave. Ste 600
Bethesda, Maryland 20814

                                                    _____/s/_____
                                                    Deborah J. Westervelt
                                                    The Law Offices of Royal Craig
                                                    10 North Calvert Street
                                                    Suite 153
                                                    Baltimore, Maryland 21202
                                                    410.385.2383
                                                    410.385.2385 (facsimile)