DEPOSITION OF JOHN LEE
CONDUCTED ON THURSDAY, JUNE 19, 2003

1 (Pages 1 to 4)

--- Page 1 ---

```
 1    IN THE UNITED STATES DISTRICT COURT
 2      FOR THE DISTRICT OF MARYLAND
 3    ----------------x
 4    MICHAEL HACKLEY, et al.,   |
 5        Plaintiffs             |
 6      v.                       | Case No. JFM 02CV3363
 7    LVLX, INC., et al.,        |
 8        Defendants             :
 9    ----------------x
10           Deposition of JOHN LEE
11             Baltimore, Maryland
12           Thursday, June 19, 2003
13                 10:00 a.m.
14
15    Job No. 5-18229
16    Pages 1-203
17    Reported by: Steven Levine
```

--- Page 2 ---

```
 1        Deposition of JOHN LEE,
 2    held in the offices of:
 3
 4         L.A.D. REPORTING COMPANY
 5         Suite 141
 6         10 North Calvert Street
 7         Baltimore, Maryland 21202
 8         (410) 539-0113
 9
10         Pursuant to notice, before
11    Steven Levine, Stenotype Reporter and Notary
12    Public for the State of Maryland.
```

--- Page 3 ---

```
            APPEARANCES
ON BEHALF OF THE PLAINTIFFS:
    DEBORAH J. WESTERVELT, ESQUIRE
    Law Office of Royal W. Craig
    Suite 153
    10 North Calvert Street
    Baltimore, Maryland 21201
    (410) 385-2383

ON BEHALF OF THE DEFENDANTS:
    CHRIS JOHNS, ESQUIRE
    18961 Highstream Drive
    Germantown, Maryland 20874
    (301) 674 6900
```

--- Page 4 ---

```
              CONTENTS
EXAMINATION OF JOHN LEE             PAGE
    By Ms. Westervelt             7, 199
    By Mr. Johns                199, 200

              EXHIBITS
  (Attached to the deposition transcript.)
NUMBER                             PAGE
 1   Notice To Take Deposition      11
 2   Answers to Interrogatories     97
 3   Answers to Interrogatories    125
 4   Answers to Interrogatories    126
 5   Response to Interrogatories   129
 6   Assignment of Copyright Interest 133
 7   General Mutual Release        135
 8   Proposal for Professional Services 136
 9   Proposal for Professional Services 136
10   Proposal for Professional Services 135
11   Permit                        147
12   Permit                        148
13   Permit                        150
14   Permit                        150
```

DEPOSITION OF JOHN LEE
CONDUCTED ON THURSDAY, JUNE 19, 2003

5 (Pages 17 to 20)

---

17

1  sold clothing.
2  BY MS. WESTERVELT:
3     Q   I'm sorry, LVLX sells clothing. In what
4  fashion, how is clothing sold? Through catalogs,
5  through retail stores, through -- how does LVLX sell
6  clothing?
7     A   Retail stores.
8     Q   How many retail stores does LVLX have?
9     A   LVLX -- can you clarify that and specify
10 exactly meaning --
11        MR. JOHNS: Do you mean LVLX, Inc. or just
12 LVLX generally?
13 BY MS. WESTERVELT:
14    Q   I don't know there's a difference. Can you
15 tell me what the difference is between LVLX, Inc. and
16 LVLX generally?
17    A   Well, it's actually LVLX Inc. which is the
18 corporation and LVLX is actually the trade name.
19    Q   Okay. So LVLX is the trade name for LVLX,
20 Inc.?
21    A   Yes, Ma'am.
22    Q   Is the LVLX trade name used by any other

18

1  corporation, the trade name LVLX?
2     A   Yes, it is.
3     Q   What's the name of that corporation or
4  corporations?
5     A   There are several but they're not --
6        MR. JOHNS: The question is as to
7  corporations.
8        THE WITNESS: I don't think I can answer
9  that properly because the problem with that is that I
10 don't have the familiarity I guess with different --
11 I don't know how you would define a corporation
12 versus, you know, LLCs versus partnerships and I
13 think that's something that I would have to speak to
14 my attorney about.
15 BY MS. WESTERVELT:
16    Q   Let me ask it a different way then. LVLX
17 is a trade name used by LVLX, Inc.?
18    A   That is correct.
19    Q   And is LVLX trade name used by other
20 entities, not specifically corporations or
21 partnerships or LLCs or anything, by other entities
22 other than LVLX, Inc.?

19

1     A   Yes.
2     Q   And could you tell me what those entities
3  are?
4     A   Yes, I can tell you. There is a
5  corporation that is called Atlantis Store, LLC. And
6  you're just -- could you repeat?
7     Q   Other than LVLX, Inc. what other companies'
8  entities use the trade name LVLX that you're aware
9  of?
10    A   When you mean also entities and
11 corporations, do you mean trading as or doing
12 business as because there are instances where it's
13 not a TA or a DBA and I don't have the documents in
14 front of me to clarify that for you.
15    Q   Just do the best you can from what you
16 know.
17    A   That's what I know right now.
18    Q   Who owns the trade name, LVLX?
19    A   That would probably have to be myself. It
20 is a trademark name. My family and LVLX, Inc.
21    Q   Did you file for a federal trademark
22 registration for the name LVLX?

20

1     A   I believe we did a couple of years ago.
2  And I have -- yes.
3     Q   Do you recall who is listed as the owner in
4  that registration?
5     A   Not right now I don't. I don't remember
6  that.
7     Q   How long have you been associated with
8  LVLX, Inc. as president?
9     A   Can you clarify that and specify the word
10 associated?
11    Q   How long have you been president for LVLX,
12 Inc.
13    A   Well, I'm not -- as I stated earlier I'm
14 not the official, I am an acting president. And in
15 that regard I would say five years.
16    Q   Do you know when LVLX was incorporated,
17 LVLX, Inc.?
18    A   LVLX, Inc. was incorporated in -- I would
19 have to really look at the documents and the
20 corporate papers because I can't give you a specific
21 time frame on that. I was still in high school.
22    Q   I asked a question earlier and I think we

DEPOSITION OF JOHN LEE
CONDUCTED ON THURSDAY, JUNE 19, 2003

19 (Pages 73 to 76)

Page 73

1   A   2002, roughly.
2   Q   Do you know a gentleman named Jeffrey Way?
3   A   Yes.
4   Q   And who is Mr. Way?
5   A   Mr. Way was or is an architect.
6   Q   Has Mr. Way ever performed any
7   architectural services for you?
8       MR. JOHNS: You mean personally?
9   BY MS. WESTERVELT:
10  Q   Yes.
11  A   Architectural services in what sense of the
12  word?
13  Q   Did Jeffrey Way ever perform any services
14  for you?
15      MR. JOHNS: For him individually?
16  BY MS. WESTERVELT:
17  Q   For you or LVLX, Inc.
18      MR. JOHNS: That's a compound question.
19  BY MS. WESTERVELT:
20  Q   Did Mr. Jeffrey Way ever perform any
21  services for LVLX, Inc.?
22  A   Did he perform any services?

Page 74

1   Q   Yes.
2   A   He was hired as the architect for record
3   for a project.
4   Q   Could you explain what architect for record
5   means?
6   A   According to the standards in the county
7   which we were advised from explained the architect
8   for record as being a person who is the architect
9   overseeing a project.
10  Q   And what project was that?
11  A   It was for Prince George's Plaza.
12  Q   Did you pay Mr. Jeffrey Way for these
13  services?
14  A   Yes.
15      MR. JOHNS: Just clarification, you or
16  LVLX?
17      THE WITNESS: Yes.
18  BY MS. WESTERVELT:
19  Q   And how much did you -- how much did LVLX
20  pay Mr. Way for these services, do you recall?
21  A   Roughly $1200.
22      MS. WESTERVELT: I believe we've asked for

Page 75

1   the production of that check and we haven't received
2   it.
3       MR. JOHNS: We'll certainly provide it.
4   That's no problem.
5   BY MS. WESTERVELT:
6   Q   Do you recall when you first had any
7   contact with Mr. Way, what time frame?
8   A   It was 2002.
9   Q   Did you first contact Mr. Way?
10  A   Yes.
11  Q   Did you have any written agreement with Mr.
12  Way?
13  A   I did not have a written agreement with
14  him, he had a written agreement with the company.
15      MS. WESTERVELT: We also asked for
16  production of that agreement, we don't have that.
17      MR. JOHNS: I will provide it.
18  BY MS. WESTERVELT:
19  Q   Did you ever have any meetings with Mr. Way
20  in person?
21  A   Yes.
22  Q   Did you have phone calls with Mr. Way?

Page 76

1   A   Yes.
2   Q   Did anyone take minutes of the in-person
3   meetings or record notes of the phone call
4   conversations?
5   A   No.
6   Q   I believe you testified that you paid Mr.
7   Way roughly $1200. How did you decide on that
8   figure?
9   A   I think that was like a standard for the
10  industry. No, that was my thought, he came up with
11  that figure, or roughly that figure, and from his
12  previous experience he mentioned that it was for an
13  architect of record to either pay by the square
14  footage that he has to oversee or just a straight
15  flat fee for his initial services whatever the
16  services may be.
17  Q   Has Mr. Way provided any other services to
18  you or LVLX, Inc.?
19  A   No.
20  Q   You mentioned a few minutes ago Commercial
21  Finish Group, who is Commercial Finish Group?
22  A   The construction company in charge of, or

137

1     MR. JOHNS: Okay.
2 BY MS. WESTERVELT:
3   Q  Do you recognize these documents, Exhibits
4 8, 9 and 10?
5   A  Yes, Ma'am.
6   Q  And what are they?
7   A  Exhibit 8 is the Hackley Zambito Architects
8 bill, Exhibit 9 is Michael Hackley Architects
9 Chartered bill, and Number 10 is also Michael Hackley
10 Architects Chartered bill for different projects.
11   Q  When you say bill, what do you mean by
12 bill?
13   A  I'm sorry, invoices. That's what it says.
14   Q  Where does it say invoices?
15   A  I'm sorry.
16     MR. JOHNS: You need a break?
17     THE WITNESS: Yes.
18     MR. JOHNS: We need to take a break. When
19 a -- when he's saying invoice, now when he said -- he
20 just needs to take a break because -- why don't you
21 take some water or something.
22     (A recess was taken.)

138

1 BY MS. WESTERVELT:
2   Q  Okay. Mr. Loe, looking at Exhibits 8, 9
3 and 10 could you explain what these exhibits are?
4   A  These are the contracts that they provided
5 me with for these projects and --
6   Q  That who provided you with?
7   A  Hackley and Zambito.
8   Q  I believe, as Mr. Johns said, there are
9 four of these agreements. I only have the three
10 here. Are these agreements similar?
11   A  Yes.
12   Q  So we can take any one that you want, the
13 May 18, 2001 for Arundel Mills the copy seems to be
14 clearer so if you want to use that one that's fine.
15 So at the outset of the Arundel Mills project did
16 Mr. Hackley produce this document for you?
17   A  Yes.
18   Q  And on page two under professional fee
19 schedule there is a phase one and phase two with
20 $10,000 crossed out and $9500 written in; is that
21 correct?
22   A  Yes.

139

1   Q  And according to this agreement are phase
2 one and phase two described in this agreement?
3   A  Yes.
4   Q  Did you agree to pay Mr. Hackley $9500 for
5 the services described in phase one and phase two?
6   A  Yes.
7     MR. JOHNS: Just for the record LVLX is the
8 party I think. White Oak Fashion.
9 BY MS. WESTERVELT:
10   Q  Phase three at the top of page two says
11 phase three construction administration and then in
12 parentheses optional if requested. You want to take
13 a minute and look at the services listed there?
14   A  Okay.
15   Q  Did Mr. Hackley ever perform any of those
16 services listed under phase three for you or for
17 LVLX?
18   A  At this time?
19   Q  At any time. If you don't recall I have
20 invoices I can show you to refresh your memory.
21   A  Yes.
22   Q  And under professional fee schedule for

140

1 phase three and additional services it's dated hourly
2 at our standard rates if requested. And when
3 Mr. Hackley performed any of these phase three
4 services for you did he bill you hourly at his
5 standard rates?
6   A  It depended on the service.
7   Q  Could you explain that please?
8   A  What he did outside of additional services
9 were very minimal and very limited. It's only under
10 my supervision if I accepted and that I wanted to
11 continue doing an additional service of whatever
12 service he may think is a service here then I would
13 approve it, but beyond that there was just very
14 nominal in terms of services.
15   Q  Turn to page three please.
16   A  Yes.
17   Q  And read underneath termination. You don't
18 have to read it out loud, just read it to yourself.
19   A  Okay.
20   Q  Did you agree with that termination clause
21 when this contract was signed?
22   A  I was not aware of it.

DEPOSITION OF JOHN LEE
CONDUCTED ON THURSDAY, JUNE 19, 2003

36 (Pages 141 to 144)

---

141

1  Q  And this, by the way, for the record these
2  Exhibits 8, 9 and 10 were produced in Plaintiffs
3  Production of Documents.
4      MR. JOHNS: I think they were also produced
5  in defendants.
6  BY MS. WESTERVELT:
7  Q  On Exhibit 10, the one we're talking about,
8  May 18, 2000, did Mr. Hackley present this, he calls
9  it a proposal for professional service, did he
10 present this proposal to you?
11 A  For this project?
12 Q  For this project.
13 A  Yes.
14 Q  Did you read it at the time, do you recall?
15 A  I don't recall this from 2000 because it
16 was May 18th of 2000.
17 Q  The next term under construction costs,
18 would you read that please, page three right under
19 termination.
20 A  No fixed limit of construction cost has
21 been or will be established as a condition of this
22 agreement.

142

1  Q  What does that clause mean to you? What
2  does that mean to you, that statement?
3  A  It means he doesn't care, the architect
4  that gave me this proposal.
5  Q  Doesn't care about what?
6  A  Doesn't care about what the limitations of
7  costs are.
8  Q  Did Mr. Hackley design the store at Arundel
9  Mills for you?
10 A  Yes.
11 Q  And the store was built from his drawings?
12 A  Yes.
13 Q  And the store opened?
14 A  Yes.
15 Q  And the store is still open?
16 A  Yes.
17 Q  Did you tell Mr. Hackley that you thought
18 that construction cost clause meant he didn't care?
19 A  I don't recall.
20 Q  This agreement was May 18th of 2000. You
21 may have had one more written agreement at least that
22 I've seen in discovery after this but according to

143

1  your Answers to Interrogatories --
2      MR. JOHNS: Which answer are you referring
3  to?
4  BY MS. WESTERVELT:
5  Q  Answer Number 15. Mr. Hackley worked on
6  multiple stores for LVLX, correct?
7  A  Yes.
8  Q  Were any of those stores listed in response
9  to Interrogatory Number 15 worked on after the
10 Arundel Mills store, worked on by Mr. Hackley?
11 A  Do you mean the stores that he drew plans
12 for?
13 Q  Yes.
14 A  After Arundel Mills?
15 Q  Yes.
16 A  That's, I believe that's in chronological
17 order.
18 Q  Okay. So if this is chronological order
19 then after Arundel Mills there was Potomac Mills,
20 Perimeter Mall, Dolphin Mall, Stonecrest Mall, Mall
21 of Georgia, Tower City, Annapolis Mall, Tyson's
22 Corner, P.G. Plaza, correct?

144

1  A  Correct.
2  Q  And did you have written agreements with
3  Mr. Hackley for any of those stores?
4  A  I don't recall.
5  Q  With the stores that you did have written
6  agreements, these three that we have in front of us,
7  Mr. Hackley, when he gave you this proposal did you
8  respond to him -- how did that work, did you respond
9  to him to go ahead and start work upon reviewing his
10 proposal?
11 A  No. He started work as soon as I sent him
12 a retainer on it.
13 Q  For a time line wise would the retainer
14 have come before the proposal or after the proposal?
15 A  It would come after.
16 Q  So he would send you a written proposal and
17 then you would decide whether you were going to
18 accept it and then send him a retainer?
19 A  Yes.
20 Q  For those stores that you didn't have
21 written agreements for and he didn't have a proposal
22 that he sent you, what initiated you to send that