IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL HACKLEY, et al.        :
    Plaintiffs,                :
vs.                            :        JFM 02 CV 3363
LVL X, INC., et al.            :
    Defendants.                :

REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON COUNT II

Defendants LVL X, Inc., John Lee, and Jeffrey Way hereby reply to plaintiffs' opposition to defendants' motion for summary judgment on Count II, and for grounds states:

On page two of their opposition, plaintiffs state that it was improper for defendants to submit a second summary judgment motion. Plaintiffs are wrong about the law. A summary judgment is an interlocutory order. *Sewell Plastics, Inc. v. Coca-Cola Co., 720 F.Supp. 1196, 1215 (W.D.N.C. 1989), aff'd in part and remanded in part, 912 F.2d 463 (4th Cir. 1990), cert. denied, 111 S.Ct. 1019, 112 L.Ed.2d 1101 (1991) and Enlow v. Tishomingo Co., Miss., 962 F.2d 501, 506 (5th Cir. 1992).* As such, the court at any time before its final decree can modify or rescind it. *Sewell Plastics, Inc. v. Coca-Cola Co., 720 F.Supp. at 1215*. The court is 'free in its discretion to grant a re-argument based either on all the evidence then of record or only evidence before the court when it rendered its interlocutory decision …' *Id. (citing Marconi Wireless Tele. Co. v. U.S., 320 U.S. 1, 47-48, 63 S.Ct. 1393, 1414-15, 87 L.Ed. 1731 (1943).* It is not improper, as plaintiffs claim, for the court to consider defendants' successive Count II summary judgment motion and to vacate its previous denial. This court clearly has the power to do so and it can only be reviewed under the abuse of discretion standard. *Id.*[1]

---

[1] Successive motions for summary judgment are also not considered improper under Maryland state law. *Joy v. Anne Arundel County, 52 Md. App. 653, 660-61, 451 A.2d 1237, 1242 (1982), cert denied, 295 Md. 440 (1983).*

Plaintiffs are also wrong about the undisputed facts. The statement (on page 2 of their opposition) that there was no additional discovery is wrong. **After** the court modified its scheduling order to allow for a successive summary judgment motion on Count II, plaintiffs received documents,[2] which plaintiffs previously refused to produce, evidencing that plaintiffs have already received $27,500.00 from co-defendants which far *offsets* the $14,283.09 in damages that plaintiffs' counsel is now claiming, for the first time on page 15 of plaintiffs' opposition.[3] *Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp., 453 F.2d 552 (1972)*. Plaintiffs counsel alleging a damage amount in plaintiffs' opposition is not evidence.

As shown on page 8 and foot note 9 of defendants' summary judgment motion, the plaintiffs, *themselves,* did not state that they had any damages in response to defendants' interrogatory. If plaintiffs counsel's own statement on damages is considered evidence for summary judgment, it is at best, untimely and extremely prejudicial to state it, for the first time, in opposition to defendants' summary judgment motion, after discovery has closed (for the second time). Plaintiffs have continuously failed to specify damages, when asked, not only during the first discovery period, but also while discovery was re-opened for the second time. Defendants seek summary judgment because there is no record of damages on Count II. *See, North West Airlines v. American Airlines, 870 F.Supp. 1504, 1512-13 (D. Minn. 1994)*.

As the court stated in *Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp., 453 F.2d 552 (1972)*, damages are offset by settlements paid to plaintiffs by co-defendants.

---

[2] Further, the posture of this case has changed since defendants' first motion for summary judgment in that defendants based some of their arguments in their second motion for summary judgment on the undisputed fact that defendant LVL X had a license to use the PGP plans.

[3] On page 15 of their opposition, plaintiffs claim damages against defendants for terminating their contract and for invoiced items. However, plaintiffs are not suing for breach of contract or on its invoices in this case.

2

> 'Payments made by any person in compensation of a claim for a harm for which others are liable as tort-feasors diminish the claim against them, *whether or not the person making the payment is liable to the injured person, and whether or not it is so agreed at the time of payment.*' (Emphasis Supplied) *Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552 (1972) citing *Restatement (Second) of Torts, Section 885(3) (Tentative Draft Number 16, 1970).*

On page 13 of their opposition, however, plaintiffs make a frivolous argument that somehow the new documentary evidence of a $27,500 offset to damages cannot be considered because it is inadmissible under Federal Evidence Rule 408. Even if one were to assume that it is within the scope of Rule 408, through trial procedures, it is still clearly an amount the court will use as an offset. *See, e.g., McInnis v. A.M.F., Inc.*, 765 F.2d 240, 251 (1st Cir. 1985). Defendants seek summary judgment because Rule 408 does not exclude consideration of said $27,500.00 offset against the zero ($0) damage amount reflected by the record in this case.

Further, plaintiffs counsel's alleged damage amount of $14,283.09 includes material items that have no relationship to Count II.[4] Attached to plaintiffs' opposition is plaintiffs' June 7, 2002, letter (Exhibit G) from which plaintiffs' counsel derived the identical $14,283.09 amount. This letter, signed by plaintiff, states that said amount relates to "OUTSTANDING INVOICES". Listed as an outstanding invoice and included in said $14,283.09 amount is $8,000.00 for a rendering ("electronic 3-D drawings"). Plaintiffs are suing defendants under Count II for a rendering which has absolutely no relationship to Count II, or to the PGP plans. Plaintiffs are clearly engaging in bad faith litigation. Also included in said $14,283.09 amount are alleged services relative to Paramus Park Mall. Clearly Paramus Park Mall has no relationship to Count II, or to the PGP plans. The fact that plaintiffs, through plaintiffs' counsel, are making this clearly frivolous claim for damages, is proof of what

---

[4] Even if one were to assume that these unrelated items were somehow related to Count II, or the PGP plans, these unrelated amounts still do not amount to more than the $27,500 *offset* that plaintiffs have already received.

defendants have been saying all along. Plaintiffs filed, and are litigating, this frivolous case to collect a false rendering bill. Plaintiffs counsel's pretend and convoluted allegation (page 15) that it was some how necessary for defendants to allegedly violate the Lanham Act to get out of paying a bill is not supported by the record and really does not make any sense. Hackley's interference left LVL X with no choice but to use the PGP plans under exigent circumstances. Plaintiffs' false claim for damages is clear proof that plaintiffs have, and are, clearly engaging in bad faith litigation at defendants' great expense.[5] Defendants request summary judgment.

Plaintiffs allege that defendants LVL X, Inc. and/or John Lee directed defendant Jeffrey Way to redact plaintiff's name from the PGP plans (opposition pages 4 through 12). However, the court has already determined at the first summary judgment hearing that plaintiff's name was not redacted. Second, defendants submitted (page 4, footnote 5) Way's testimony on this point (pages 19 and 20, lines 10 thru 22 and lines 1 thru 6) stating that:

> … So I was able to determine in my opinion that the plans seemed to be in conformity with what I … know code requirements to be. At that point I signed and sealed the plans, but I put a superscription or subscription, I either wrote it above or beneath my seal on the plan, it said for permit review only or for permit purposes only, something like that, and I affixed my signature, my initial signature thereto. … Q: And then who did you return the drawings to? A: … [T]he general contractor *[defendant Commercial finish Group]*.Q: Could have it been Ron Reece. A: That sounds familiar, and I gave the plans back to him *(emphasis)*.

Way testified that he only reviewed, signed, sealed the plans, and wrote "for permit only". He then gave the plans to CFG. **When plaintiffs deposed defendant Way, they didn't even ask Way whether he redacted plaintiff's name, or if he was directed to do so. When**

---

[5] It was improper, incorrect, unfair and unduly prejudicial for plaintiffs to state on page 2 in their opposition that they "attempted to settle this remaining Count with Defendants with no success". In an attempt to resolve this case, in settlement negotiations, defendants asked the plaintiffs to specify their damages and to consider the offsetting amounts that they have already received from co-defendants. Plaintiffs could not specify any damages and refused to consider any offsetting amounts. Plaintiffs statement opened the door to this footnoted response.

**plaintiffs deposed defendants Lee and LVL X, they also didn't ask whether they had redacted, or caused a redaction.** Defendants direct the court's attention to plaintiffs Exhibit F. In paragraph 6, Way's statement is again only limited to signing and sealing the plans.

Plaintiffs did not adequately respond to defendant Way's testimony and statement by submitting to the court in opposition contradictory and competent evidence. Defendants hereby object to plaintiffs attempting to use *non-party* Commercial Finish Group's ("CFG") interrogatory answer 18 (Exhibit K) for the following reasons. First, the interrogatory asks about plaintiff's name being redacted when it is undisputed, as the court has already acknowledged, that plaintiff's name was not redacted. Second, the interrogatory does not ask who put or caused lines to be put through plaintiff's name. Third, in its answer, CFG only states that it "believes" that what it is saying is true. CFG does not state that it, through any person, has personal knowledge that its answer is true. Fourth, there is no oath, nor signature page, attached to the Exhibit. Fifth, this is not LVL X's, John Lee's, nor Jeffrey Way's interrogatory answer and *non-party* CFG's answers cannot be used against these defendants.

Defendants respectfully submit that summary judgment is warranted because it is beyond dispute that plaintiff's name was not redacted from the PGP plans. Like they failed to make a record on damages, plaintiffs' failed to submit evidence that any of the defendants did, or caused, plaintiffs' name to be redacted from the PGP plans. Furthermore, plaintiffs' allegation on this point is contradicted by the PGP plans, themselves, on which Hackley's name still appears. *See, e.g., Arancibia v. Berry, 603 F.Supp. 931, 934 (1985)(key cite 4).*[6]

---

[6] Defense counsel takes issue with plaintiff counsel's allegation made on opposition page 5 that he failed to distribute discovery documents. Attached to previously filed papers in which the same false allegation was made were letters defense counsel sent to plaintiffs' counsel in an attempt to schedule the copying of said documents to which plaintiffs' counsel failed to respond. Defense counsel can again provide the court with said letters.

5

On page 9 of their opposition, plaintiffs attempt to claim that unclean hands is not a viable defense (assuming there was even a violation). The following facts were shown by defendants in their first motion for summary judgment[7] and which were not, and still are not, contradicted by plaintiffs' evidence. Plaintiffs submitted what turns out to be a fraudulent rendering bill to defendant LVL X. When defendant LVL X, through defendant John Lee, asked plaintiffs for a break down of said bill, plaintiffs repeatedly refused to provide it. Because of this, LVL X would only pay plaintiffs for the PGP plans and other items, but not for the rendering. To collect on the fraudulent rendering bill, plaintiffs took LVL X's Tyson's Corner store's chandelier which LVL X immediately needed to open. LVL X replaced the chandelier. Because that didn't work, Hackley, as he told witness Chalk, pulled LVL X's PGP permit in a further attempt to collect his fraudulent rendering bill. **Also see (in addition to Chalk's affidavit), plaintiffs' own Exhibit F, paragraph 4 "Soon thereafter, Mr. Hackley had the permit rescinded when the client did not pay for his services."**[8] Shutting LVL X down at PGP to collect a fraudulent rendering bill is a violation of the Hobbs Act. *In re American Honda Motor Co., Inc. Dealership Relations Litigation*, 965 F.Supp. 716 (1997).

To mitigate its damages, LVL X hired defendant Jeffery Way to review, sign and seal the plans for permit purposes only. It was thought that because of very stringent lease constraints, LVL X did not have enough time for another architect to develop another set of plans. However, because of Hackley's further interference, LVL X had to hire a third architect

---

[7] For the record, defendants incorporate by reference their first motion for summary judgment for efficiency so items already in the record to support these contentions do not have to be repeated in this reply memorandum.
[8] Plaintiffs misrepresent Ms. Malinda Steward's testimony as indicating that Hackley did not interfere with LVL X's ability to get a permit for the PGP plans.

to make a new set of plans. Finally, since none of that worked, Hackley brought this case, again, in an attempt to collect his fraudulent rendering bill. So none of this would have happened but for Hackley fraudulent rendering bill, theft and extortion, or **unclean hands. Hackley maliciously interfered with the license he sold to LVL X, for it to use to timely obtain a permit and to construct its PGP store.** *Keystone v. Excavator, 290 U.S. 240 (1933).*

WHEREFORE, defendants LVL X, Inc., John Lee, and Jeffrey Way respectfully request this honorable court to vacate its denial of defendants' first summary judgment motion on Count II and to grant defendants' second summary judgment motion on Count II.

Respectfully submitted,

\_\_\_\_\_/s/_____
Christopher M. Johns, Esq.
P.O. Box 975, Laurel, MD 20707
Telephone: 301-674-6900
Facsimile: 301-540-5901
Bar No.: 15677

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 02-13-04, I caused a copy of the foregoing paper to be served to: Deborah Westervelt, 10 North Calvert Street, Suite 153, Baltimore, MD 21202.

\_\_\_\_\_/s/_____
Christopher M. Johns